MARTHA E. HALL et al., Appellants, v. JOHN MORTON et al., Respondents.

Kansas City Court of Appeals, May 6, 1907.

1. **NUISANCES: Injunction: Use of Property.** One must so use his possession as not to injure his neighbor, and a use which results in permanent nuisance to his neighbor may be restrained by injunction.

2. **EASEMENTS: Unity of Ownership: Severance of Ownership.** Where the owner of land has by artificial arrangement effected an advantage for one portion to the burdening of another, upon the severance of the ownership the holders of the two portions take them respectively charged with the servitude and entitled to the benefit openly and visibly attached at the time of the conveyance of the portion first granted.

3. ————: **Mines and Mining: Reasonable Use.** On the evidence relating to the use of defendant's mine it was held not to differ from the use it enjoyed while plaintiff was the owner of it and the servient estate, and that the defendant had the right of enjoyment in the means of drainage as it existed before the severance, and that defendant could not be enjoined for the reasonable use thereof.

Appeal from Jasper Circuit Court.—*Hon. Hugh Dabbs,* Judge.

AFFIRMED.

*McReynolds & Halliburton* for appellant.

(1)    To constitute a watercourse there must be a stream usually flowing in a particular direction, though

it need not flow continually; it must flow in a definite · channel, have a bed, sides or banks and usually discharge itself into some stream or body of water. Benson v. Railroad, 78 Mo. 504; Jones v. Railroad, 18 Mo. App. 251. (2) Sloughs or swales are not regarded, in law, as watercourses, as to water flowing over the country which had escaped from the banks or natural channel of a running stream. Jones v. Railroad, 18 Mo. App. 251; Byrner v. Railroad, 47 Mo. App. 383. (3) The superior (higher landowner) proprietor has no right to collect the water in a body on his land or in greatly increased or unnatural quantities, and precipitate it upon his neighbor to the substantial injury of the latter. Schneider v. Railroad, 29 Mo. App. 68; McCormick v. Railroad, 70 Mo. 359; Abbott v. Railroad, 83 Mo. 271; Benson v. Railroad, 78 Mo. 504; Rychlicki v. St. Louis, 98 Mo. 497; Paddock v. Sones, 102 Mo. 226. (4) The defendant claims that there are different rules where parties are mining to those set out above and laid down by the Missouri courts. It is true that so far as we can find the Missouri courts have not passed on a case of water, debris and sludge from mines, but an examination of the authorities will show that the only difference, if any, is that in mining, the rule is more stringent; and so far as debris, tailings, sludge, etc., is concerned, the miner is absolutely bound to take care of it and keep it off his neighbor or adjoining proprietor's land. 15 Am. and Eng. Ency. (1 Ed.), p. 587, par. 5; Jones v. Jackson, 9 Cal. 237; Logan v. Driscoll, 19 Cal. 623; Hobbs v. Canal Co., 66 Cal. 161; Lincoln v. Rogers, 1 Mont. 217; Nelson v. O'Neal, 1 Mont. 284; Ralston v. Plowman, 1 Idaho 595; Harvey v. Mining Co., 1 Nev. 539; Woodruff v. Mining Co., 18 Fed. 753; Bainbridge on Mines, p. 518. (5) The lease from Martha E. Hall to defendant company's assignor is no protection to defendants creating a nuisance, because it does not authorize the doing of the acts of which the plaintiffs com-

plain, does not authorize the sending of sand, sludge or debris onto plaintiff, simply requires the pumping of the land sufficient to permit efficient mining. Clear water has not injured plaintiff's land, the injury is caused by sand, sludge and debris washed down the branch by defendant's choking the channel and spreading over and destroying plaintiff's land and access from one part to the other. The lease should have been excluded. Wood on Nuisance, sec. 358; Steffen v. Railroad, 156 Mo. 336; Nunnelly v. Iron Co., 28 L. R. A. 421.

*A. E. Spencer* for respondents.

(1) The only drainage from defendants' land was the natural watercourse crossing defendants' land. This was practically conceded by all witnesses to be a natural watercourse. 30 Am. and Eng. Ency. Law (2 Ed.), p. 349. (2) When plaintiffs devoted this land to mining purposes, made the drainage over their other land necessary, and permitted it, and then sold the mining land to others, who bought for mining purposes, and because of the mineral value, the right of drainage was a necessary easement, a way of necessity, and plaintiffs' deed of the land by necessary implication carried the right. Kelly v. Dunning (N. J.), 10 Atl. 276; Insurance Co. v. Patterson (Ind.), 2 N. E. 191; Voorhees v. Burchard, 55 N. Y. 98; Boland v. St. John's Schools (Mass.), 39 N. E. 1035. (3) Even when the above question of the act of the former proprietor in creating a way of necessity does not arise, the cases hold that it is a material question whether defendants' use of the stream or watercourse is a reasonable one under all the circumstances. The evidence shows that except as restrained by the decree, the defendant company, is doing everything possible to protect plaintiffs' land, and that its use of its land is not only reasonable, but absolutely necessary. Townsend v. Bell, 70 Hun 557, 24 N. Y. Supp. 193; Helfrich v. Water Co. (Md.), 17 L. R. A.

117; Barnard v. Shirely (Ind.), 34 N. E. 600, 24 L. R. A. 568; Robb v. Village (Ill.), 42 N. E. 77; Brainard v. City (Mass.), 27 N. E. 995.

BROADDUS, P. J.—This is a suit by injunction to restrain the defendants from permitting sand, sludge and other debris from escaping from their mining operations onto and over the lands of plaintiffs. For convenience we have adopted in part the statements of counsel as to the facts of the case.

Plaintiff, Martha E. Hall, is the owner of the northwest quarter of the northwest quarter of section twenty-five (25), township twenty-nine (29), range thirty-two (32), in Jasper county, Missouri, with other adjoining lands. Her coplaintiffs are in possession of said premises, under lease from her, for agricultural purposes. The defendant company owns the north half of the southeast quarter of the southwest quarter of section twenty-four (24), and also a tract four hundred (400) feet square adjacent thereto and being a part of the northeast quarter of the southwest quarter of said section; all being in said township twenty-nine (29), range thirty-two (32), in Jasper county, Missouri. The four hundred (400) foot tract is described as mining lots 40, 41, 44 and 45. The company acquired and holds title to these lots subject to a mining lease given by plaintiff, Martha E. Hall, which lease is owned by the May Mining Company, a stranger to this litigation; but said company also owns a mining sub-lease on said lots, under which it is engaged in mining thereon. All the mining of which plaintiffs complain is being done on these four lots. Defendant, John Morton, owns the south half of the southeast quarter of the southwest quarter of said section twenty-four (24), and also all the northeast quarter of the southwest quarter thereof except said four lots. No mining complained of by plaintiffs is being done on his land. Defendant, Thomas

Douglass, is the manager of defendant company. The land of this company is higher than that of the plaintiffs, and is crossed by a natural watercourse which continues over and across plaintiffs' land and then to Spring River. Plaintiffs seek to have all of the defendants restrained from throwing water, gravel, rock, or other waste material onto their lands, and from permitting water, gravel, rocks or other waste material to run over their land from the mines of the defendants.

After hearing all the evidence, the court rendered a decree, dismissing the bill as to defendants, Morton and Douglass, and enjoining the defendant company from depositing the sludge and refuse obtained in cleaning its pond on said four lots, "in such places or in such manner as to permit same to flow or be washed into the natural watercourse on said premises and the forty-acre tract immediately south thereof, and from thence washed and deposited on the lands of plaintiffs" south of the above-described premises. From this decree plaintiffs appeal.

On May 4, 1898, plaintiff, Martha E. Hall, owned all the land above described, and other lands, in all about eight hundred (800) acres in one body, not developed as mining land. On that date she and her husband executed and delivered to James Luke and plaintiff, C. T. Hall, a mining lease, giving the latter the right to mine for lead and zinc ores upon said northeast quarter of the southwest quarter of said section twenty-four (24), for ten years from that date, with contract to extend for another period of ten years upon compliance by the lessees, or their assigns, with the terms of the lease. The life of this lease is dependent upon performance by the lessees, or their assigns, of various terms and conditions therein contained, amongst which are the following, to-wit:

"The parties of the second part (lessees) shall begin work on said land within thirty days from this date and

shall prospect and mine the same in a thorough and mining-like manner and mining operations shall not be suspended for a longer period than thirty days without the consent of the parties of the first part.

"The parties of the second part shall have the right to erect buildings and machinery on said land for the purpose of crushing and cleaning ores, and to remove the same at the expiration or termination of this lease. The parties of the second part shall place and have on said land sufficient pumps and pumping machinery to drain said land so as to permit the efficient mining of the same. *All ores shall be cleaned, prepared for market and weighed on the said land* unless otherwise permitted by the said first parties. The parties of the second part shall, during the first year of this lease, sink three shafts or drill holes to a depth of one hundred and fifty feet, unless ore in paying quantities is found at a less depth. A failure to comply with the terms of this lease shall end and determine the same and the parties of the first part may declare an ouster and enter upon and hold said premises."

A shaft was promptly sunk on said leased premises (being on said four lots) and the lessees commenced pumping water therefrom about the summer of 1899. Then a mill was erected, and the lessees commenced cleaning ore thereon about the summer of 1900. The pumps have been practically in continuous operation since they first started, and the water has always flowed down the natural watercourse above mentioned. This is the natural drainage for all the basin in which the mines are located. Owing to the configuration of the surface, there is no other possible drainage. The mining operations cannot be carried on except by the use of the pumps and the mill. They are of the kind and character in general use in this district. The defendant company (which does the only mining complained

of) has a pond into which the water first runs and settles.

The evidence shows that sand and sludge escapes with the water that flows from the operation of defendants' mines over and onto the plaintiffs' lands and has at points filled up the watercourse, spread over the adjacent ground, destroyed the crops and put plaintiffs to inconvenience in going to different parts of their premises. Although there is some testimony upon the part of the defendants that the debris escaping from their premises is the result of natural causes and not from the operation of the mine, yet the great preponderance of the evidence is with the plaintiffs upon that issue. The contention of defendant is that the debris that did escape from the working of the mine was the minimum that would usually result in the operation of mines of a similar character.

In separating the zinc ore from the earth and crushed material with which it is mixed water is employed. In the process, the ore, being heavier than the other material, sinks to the bottom. The water containing the floating material of sand and sludge is then drawn off and into a pond used for the purpose where it is left to settle. The water used in the separation of the ore from other material is taken from this pond, and what is not so used passes out of a gateway into the stream in question and flows down through its channel in the direction of Spring River. It was shown that more or less sand and sludge remained floating in the water which in its course settled in the stream filling up its bed in places where the banks were only a few inches in height, and then overflowing and settling on plaintiffs' land. It was shown that the only drain for the mine was the bed of this stream and that the mine could not be operated without using it for drainage.

In the course of time the settlings from the water would fill the pond to such an extent as to require them

125 App—21

to be taken out. When they were taken out, they were deposited on the ground near the pond, and it was shown that the rains would wash some of this into the stream. It appeared that defendant by the erection and use of other ponds or settling basins could have almost, if not entirely, prevented other than clear water flowing into the stream. The court enjoined defendant from permitting any sand or sludge from escaping from its premises into the stream resulting from the debris taken from the pond and deposited on the ground, but denied plaintiffs any relief against the consequences of the overflow water from the pond.

The plaintiffs insist on the application of the well-known doctrine that a person must use his possession in such a manner as not to injure his neighbor in his possession, and that a use which results in a permanent nuisance to his neighbor will be restrained by a court of equity. [St. Louis Safe Deposit Bank v. Estate, 101 Mo. App. 370, and cases there cited.] While defendant admits that the law is stated correctly, it denies that it has any application to the facts of this case and we think justly.

At the time plaintiff, Mary Hall, and her husband created the lease under which the defendant mining company is operating the mine, she was the owner of all the land described. By the terms of the lease the lessees were required to mine the leased land and to have sufficient machinery to drain it so as to permit efficient mining, and that, "All ores shall be cleaned, prepared for market and weighed on said land unless otherwise permitted" by lessors. And it was further provided that upon failure to comply with its terms the lessors had the right to declare it forfeited. The defendant mining company under its lease has no option in the matter and is bound to continue the mining as therein provided.

When plaintiff, Mrs. Hall, sold the land on which

the mine was located, she being the then owner of the servient land also, there was an implied grant of an easement to the continued use of the stream for drainage. This doctrine is stated in Washburn's Easements and Servitudes, p. 56, et seq., and numerous decisions are cited to support the author's statement of the law. Among the cases cited is that of Lampman v. Milks, 21 N. Y. 505, where the law is stated thus: "Where the owner of land has, by any artificial arrangement, effected an advantage for one portion, to the burdening of the other, upon a severance of the ownership the holders of the two portions take them respectively charged with the servitude and entitled to the benefit openly and visibly attached at the time of the conveyance of the portion first granted." This principle is recognized in an English case. [Pearson v. Spencer, 1 Best & Smith 571.] In Kieffer v. Imhoff, 26 Pa. St. 438, it is held that: "If the dominant and servient tenements become vested in the same owner by the common law, the easement is extinguished by unity of title; by the civil, the servitude is lost by confusion. . . . Upon a subsequent severance of the estate by alienation of a part, the alienee becomes entitled to all continuous and apparent easements which have been used by the owner during the unity of the estate and which are necessary for the enjoyment of the several parts."

It was disclosed by the evidence that the use of the stream by the defendant mine owner was not different from what it was while plaintiff, Mrs. Hall, was the owner of both estates. Such being the fact, we conclude that the defendants under their purchase of the dominant estate and the lease created by Mrs. Hall had the right of enjoyment in the stream as it existed before the severance of the estate in the land.

We are in no doubt whatever as to the defendants' right to an easement in the stream for the purpose of drainage, and as an independent question we are of

the opinion that their right to its reasonable enjoyment is equally clear, which was a question of fact for the court and such was the holding in Townsend v. Bell, 77 Sup. (N. Y.) 557. The right being established, the reasonableness of its enjoyment necessarily follows and as the evidence shows that the operators of the mine used the stream for drainage in the customary manner prevailing in the mining district in which it is situated, the finding of the court should be upheld.

Affirmed. All concur.