## LOUISVILLE AND NASHVILLE RAILROAD COMPANY *v.* NELSON, trustee.

1. Where lands are conveyed by indenture to a person who does not sign the deed, yet, if he enter upon the land and accept the deed in other matters, he will be bound by covenants in it. And where the covenantor, being a non-resident corporation, made the covenant by virtue of receiving the deed reciting the covenant, upon the appointment of another corporation which had really purchased the land without having taken a deed in its own name, and thereafter, jointly with the corporation which purchased the land, executed another deed in which the same purchasing corporation and another corporation were the grantees, and in which it was recited that the two last named should perform the covenant made by the covenantor in the first deed, and such corporation accepted possession thereunder, equity will entertain a suit for specific performance of the covenant, instituted by the covenantee against the last two corporations.

2. Where the covenant was an agreement to open and construct a public street and sidewalks in a city through lands of the covenantors, located in a manner that would be beneficial to the covenantee, it would amount to an agreement to confer upon the covenantee an incorporeal interest in the land; and where based upon adequate consideration, and certain and fair in all its parts and capable of being performed, a court of equity will decree specific performance.

(a) In the deed there was another clause which declared that the covenant should not be enforceable until the city allowed establishment of the street. The allegations of the petition sufficiently alleged consent upon the part of the city to the establishment of the street.

3. Under the circumstances of the case, the plaintiff's right to equitable relief was not barred by laches.

4. The rulings announced in the preceding notes are controlling upon all questions presented by the record; and there was no error in overruling the demurrer.

AUGUST 16, 1916.

Equitable petition. Before Judge Bell. Fulton superior court. January 30, 1915.

This was an equitable action by the trustee of the Protestant Episcopal Church against the Louisville and Nashville Railroad Company and the Atlantic Coast Line Railroad Company, lessees of the Georgia Railroad Company, for specific performance of a covenant in regard to locating and improving a street in the City of Atlanta. The exception is to a judgment overruling a demurrer to the petition. There were allegations in the petition to the following effect: The church owned a lot in the City of Atlanta, on which were located a cathedral and Sunday-school buildings, where

services were held. The buildings fronted west on Washington Street, which terminated slightly north of the church property where the street abutted certain property of the railroad company. At the terminus of Washington Street, Waverly Place, another street, proceeded west, extending along the railroad property in the direction of the Union depot and the central part of the city to Central Avenue. Waverly Place, though on the opposite side of Washington Street from the church property and slightly north of it, afforded one of the means of access to the church. The railroad company formulated a plan for the construction of freight terminals, which involved the closing of Waverly Place, the use of the strip of land on which it was located, the use of a strip of land off the north part of the church, lot, and the use of lots south of and bordering on Waverly Place and other land which need not be mentioned. The railroad company exhibited its plans to the church, and proposed to buy the strip of land from the northern part of the church property, upon terms which were specified. Among these terms were the following: "(2) The property above described to be used (in connection with other property owned or controlled by the Atlanta, Knoxville & Northern Ry. Co.) for railroad purposes in a comprehensive plan for freight terminals, substantially shown by a ground-plan blueprint which was exhibited with the said proposition dated the 20th day of February, 1904, the said plan contemplating the relocation of Waverly Place approximately 90 feet south of its present location, so as to make its north projected line coincident with the south line of the strip of land hereinbefore described. (3) The price to be paid for said property to be $18,000, which sum is to cover the value of the strip of land actually appropriated for railroad uses and all reasonable easements and rights in the streets and sidewalks on which it abuts, and also all damages to the residue of said church lot resulting from the establishment and operation of freight terminals as proposed and shown by the said blueprint. The consequential damages referred to are not to include any damages or claim for damages to the residue of the property vested in the trustee and his successors, which may be caused by the construction of approaches to a viaduct over the track and yards of the railroads for the purpose of extending Washington Street northward. All claims for any such damages to be unprejudiced by this deal and

purchase. (4) Waverly Place, as relocated, to be 60 feet wide, with ten ft. sidewalks on each side, the roadway to be paved with asphalt and sidewalks paved and curbed as in the present street. The north boundary of said street shall be separated from the proposed railroad-yards by masonry retaining walls surmounted by suitable guard railing or fence. . . (6) The roundhouse situated on the Georgia Railroad near said church property to be removed, within one year, from the vicinity of said property, as a part of the changes in said railroad yards. . . (9) The covenants and agreements stated in said proposition of Feby. 20, 1904, to be incorporated in the deed to said property, so as to run with land sold." The proposition was accepted; and a contract reduced to writing, setting out the terms of the proposal and acceptance thereof, was duly executed. Shortly thereafter the railroad company sold out to the Louisville & Nashville Railroad Company, and, upon direction of the purchaser, the contract was transferred by the seller to the Louisville Property Company, a Kentucky corporation, to be held for the purchaser. After the transfer of the executory contract, the Louisville Property Company paid the cash consideration contracted to be paid to the church for the strip of land, and received a deed from the church. The deed recited the terms of the executory contract, including those above mentioned, and purported to be executed in pursuance thereof and of the transfer, and to convey the land in fee simple "subject only to the conditions set forth herein, which were contained in the proposition of" (the proposal to the church above mentioned), "which said condition shall run with the said land hereinabove described." It also recited that "said condition shall not be enforceable, except as to removal of said roundhouse, until the City of Atlanta allows exchange of streets, exchange of enginehouse property, and other changes shown in the blueprint drawing of the proposed enlargement of railroad terminals referred to in said proposal." The Louisville Property Company also acquired from the City of Atlanta the site on which Waverly Place was located, and from various owners the lots south of Waverly Place, through which it was contemplated the new location of that street should extend, and all the property necessary for construction of the terminals. After acquiring all of such property and completing the terminals, the Louisville Property Company, in considera-

tion of reimbursement for the cost of the various properties and of one dollar, executed a deed, in which the Louisville & Nashville Railroad Company joined as maker, conveying all the properties above mentioned to the Louisville & Nashville Railroad Company and the Atlantic Coast Line Railroad Company, lessees of the Georgia Railroad Company. The deed recited that the conveyance of the original site of Waverly Place and the lots on which it was to be relocated and the strip of land obtained from the church was "made upon the express condition that said lessees do assume all the burdens and obligations, if any, created by or arising out of the provisions, terms, conditions, and covenants" contained in the deed above mentioned from the church to the Louisville Property Company. In constructing the terminals, Waverly Place, as located when the church made its deed, was closed, and the street was not opened at the new location as proposed. When the church sold the strip of land from the north part of its lot, and consented to the closing of Waverly Place as then located, a part of the consideration moving it to do so was the agreement to relocate Waverly Place as specified; and the refusal to do so operates as an irreparable injury to petitioner, on account of closing one of the avenues of approach to its property. Other facts will sufficiently appear from the opinion.

*Tye, Peeples & Jordan* and *McDaniel & Black*, for plaintiff in error.

*Z. D. Harrison, C. L. Pettigrew,* and *Smith, Hammond & Smith,* contra.

ATKINSON, J. 1. In a different suit brought by the church against the first contracting railroad company upon the executory contract, after the church had executed its deed, this court held that the contract was merged into the deed and could not be enforced against the original purchaser as containing personal covenants. *Nelson* v. *Atlanta, Knoxville & Northern Ry. Co.,* 135 *Ga.* 572 (69 S. E. 1118). After that decision the present suit was instituted against the lessees (the grantees in the last deed); and it is now urged that the petition does not show such privity of contract between the church and the lessees as will support an action for specific performance. The first deed, being that which was executed by the church to the Louisville Property Company, set out the covenants specifically, and the grantee accepted it and took

possession under it. Such acceptance would make the covenants so expressed in the deed binding upon the grantee, notwithstanding the grantee did not sign the paper. *Georgia Southern Railroad* v. *Reeves,* 64 *Ga.* 492; *Atlanta, Knoxville & Northern Ry. Co.* v. *McKinney,* 124 *Ga.* 929 (53 S. E. 701, 6 L. R. A. (N. S.) 436, 110 Am. St. 215); *Kytle* v. *Kytle,* 128 *Ga.* 387 (57 S. E. 748); *Union City Realty Co.* v. *Wright,* 138 *Ga.* 703 (76 S. E. 35). Under the principle of the cases cited, the second deed, that is, the deed from the Louisville Property Company and the Louisville & Nashville Railroad Company to the Louisville & Nashville Railroad Company and the Atlantic Coast Line Railroad Company, having expressly referred to the covenants in the first deed and "assumed" performance thereof, and the grantees having accepted the deed and possession under it, such acceptance would commit the grantees, as against the grantors, to the performance of the covenants. Thus far, it is demonstrated that the grantees in the last deed have promised the grantees in the first deed to perform the covenants set out in the first; but it remains to be determined whether the promise will authorize the grantor in the first deed to sue the grantees in the last, directly in equity, for specific performance of the covenants. The case of *Bell* v. *McGrady,* 32 *Ga.* 257, was where a firm engaged in a livery-stable business purchased a horse and buggy, giving therefor its promissory note, which was transferred by the payee to another person for value. Shortly thereafter the firm sold out, including the horse and buggy with the property sold, and the purchaser agreed in writing to pay all the debts and liabilities of the firm. The firm became insolvent, and one of its members absconded. The holder of the note filed a bill in equity against the members of the firm and the purchaser, to compel the latter to pay the note. A judgment dismissing the bill was reversed; this court ruling, in effect, that the purchaser of the assets of the firm, by virtue of his agreement with them, stood in the position of a trustee to pay their debts, and that it was proper for the creditor to go into equity to enforce this agreement. The principle of that case was also applied in *Dallas* v. *Heard,* 32 *Ga.* 604; *Sheppard* v. *Bridges,* 137 *Ga.* 615 (74 S. E. 245); *Union City Realty Co.* v. *Wright,* supra; *Williams* v. *American Tie & Timber Co.,* 139 *Ga.* 87 (76 S. E. 675). See also *Grooms* v. *Grooms,* 141 *Ga.* 478 (81 S. E. 210). The present

case also falls within the principle. The defendants received from the Louisville Property Company, a non-resident corporation, all of the property, and made a binding promise to that company to perform the identical covenants which had been made to the plaintiff in regard to relocating Waverly Place. No complaint was· made that the Louisville Property Company was not made a party to the case; but if generally that company would be a necessary party, it would not be under the circumstances of this case, it appearing from the recitals in the second deed and allegations of the petition that its relation to the contract with the plaintiff and title conveyed by the plaintiff was fiduciary and in behalf of the Louisville & Nashville Railroad Company, which was one of the defendants. That company being a principal, which both defendants recognized by execution of the second deed in which it was both a grantor and a grantee, and being a party defendant, it was unnecessary to make the fiduciary a party.

2. In the foregoing division it appears that the covenant to relocate Waverly Place was in writing and operated against the defendants as covenantors, as if both had signed the deed. It was in effect an agreement upon a valuable consideration to open a public street through land which they acquired, which street would be so located with respect to the plaintiff's property as to afford a direct way of ingress and egress to the church from the central part of the city. This amounted to an agreement with the plaintiff ·to establish an easement over the land of the defendants, which would be beneficial to the covenantee. The easement would be an incorporeal right over the land, and such that for a refusal to carry out the covenant an action in behalf of the covenantee would ordinarily lie against the ·covenantor for specific performance. *Russell* v. *Napier,* 80 *Ga.* 77 (4 S. E. 857). Treating the covenant as reduced to writing and relating to land, and certain and fair in all its parts, and based on an adequate consideration and capable of being performed, a court of equity will decree specific performance of it as a matter of course. *Clark* v. *Cagle,* 141 *Ga.* 703 (82 S. E. 21, 53 L. R. A. (N. S.) 317), and numerous cases collated in 11 Michie's Dig. Ga. R. 764. As indicated by the statement of facts, it appears from the face of the petition that the covenant was certain and fair in all its parts, based on an adequate consideration, and capable of being performed. The mere fact that the

covenant was for the location of a public street, as distinguished from a private way, would not affect the right of the covenantee to the easement. Edwards *v.* Moundsville Land Co., 56 W. Va. 43 (48 S. E. 754). The covenant extended further than the mere granting of a right to pass over the lands of the covenantor, and contained an obligation upon the part of the covenantor to construct a street and sidewalks in a particular manner, to be adopted by the city and maintained as a public street; and it was coupled with the further condition that the covenant should not be enforceable until the city had allowed the substitution of the new street for that which had formerly existed. To meet this condition, it was alleged that the city had formally adopted an ordinance authorizing the discontinuance of the old street and location of the new, and that no cause existed to prevent the covenantors from locating the street in accordance with the terms of the covenant.

3. It was also contended that plaintiff was barred, on account of delay in instituting the suit, from maintaining his action for specific performance. In the Civil Code, § 4369, it is declared: "The limitations herein provided apply equally to all courts; and in addition to the above, courts of equity may interpose an equitable bar whenever, from the lapse of time and laches of the complainant, it would be inequitable to allow a party to enforce his legal rights." In the Civil Code, § 4536, it is declared: "Equity gives no relief to one whose long delay renders the establishment of the truth difficult, though no legal limitation bars the right." The covenant to relocate Waverly Place, which was the basis of the action, though contained in the executory contract made in 1904 and the deed executed by the church to the Louisville Property Company in the same year, was also included in the deed executed to the defendants, which was dated February 1, 1908. Up to that time there was no repudiation of the covenant, but a promise upon the part of the defendants to perform it. It is not alleged when the defendants refused to perform it, but of necessity it was subsequent to February 1, 1908. The action for specific performance was instituted January 3, 1913. It does not affirmatively appear from anything alleged in the petition that any delay upon the part of the plaintiff in instituting the suit was sufficient to render the ascertainment of the truth difficult, or that on ac-

count of the lapse of time it would be inequitable to allow the plaintiff to enforce his rights.

4. The ruling announced in the fourth headnote does not require elaboration.

*Judgment affirmed. All the Justices concur.*

LUMPKIN, J., concurring specially. I concur in the affirmance of the judgment overruling the demurrer to the plaintiff's equitable petition; but I am not prepared to concur in what is said as to the application of the decisions in *Sheppard* v. *Bridges,* 137 *Ga.* 615 (74 S. E. 245), and like cases.