ALBERT S. APSEY & another, trustees, *vs.* KATHERINE C. NASH & others.

Suffolk.    November 21, 1917. — January 2, 1918.

Present: RUGG, C. J., DE COURCY, CROSBY, PIERCE, & CARROLL, JJ.

*Deed. Easement. Way,* Private.

A grant of an easement in land cannot be created by implication from the words of a deed or indenture or from the conjectured wishes of the parties where the easement is not conveyed by words of grant and inheritance.

PETITION, filed in the Land Court on June 23, 1916, to register the title to a parcel of land bounding southerly on Eliot Street in Boston and including the southerly portion of what is known as Boylston Place, as more fully described in the opinion, alleging the non-existence of any rights or easements of the respondents in the petitioners' portion of Boylston Place other than a right of drainage.

The case was heard by *Davis,* J., who made the findings quoted in the opinion and ruled that the respondents had of record no rights or easements in the part of Boylston Place included in the petitioners' land other than the right of drainage granted by a certain indenture of 1853. The respondents alleged exceptions to this ruling.

A copy of a plan or diagram, which was annexed to the bill of exceptions as an exhibit, is printed on page 79. On this diagram the locus is marked by that word and the lots which were owned by the parties to the indenture of 1853 other than one Brackett and which were alleged by their owners to be dominant tenements are marked with the letter D.

*R. W. Hale,* for the respondents.

*A. S. Apsey, (L. L. Green* with him,) for the petitioners.

PIERCE, J. This is a petition for registration of title to a tract of land on Eliot Street in Boston, including the southerly portion of what is now known as Boylston Place. The respondents are the owners of the land on either side of that portion of Boylston Place which extends from the land of the petitioners northerly to Boylston Street. They have a right of drainage through the land of the petitioners to Eliot Street, which is admitted, and they further claim as appurtenant to their several estates a right of free passage over that portion of the petitioners' land which lies under Boylston Place as it now exists, and to have said portion remain open, unbuilt on and unobstructed. The petitioners deny the existence of any rights or easements in their portion of Boylston Place other than the right of drainage.

The following statements are taken from the decision of the judge of the Land Court:

"In 1853 Boylston Place extended southerly as far as the land now of the petitioners. On either side of it were dwelling houses of a high class, the only access to which was from Boylston Street through Boylston Place. At the southerly end of Boylston Place was a high brick wall closing the place at that end and preventing any access to it from Eliot Street. The land now belonging to the petitioners was owned by one Brackett.

"On September 30, 1853, the owners of the land on either side of Boylston Place as it then existed entered into an indenture with Brackett, by the first clause of which they granted to Brackett

as appurtenant to so much of his estate on Eliot Street as lay northerly of a line forty feet distant northerly from and parallel

BOYLSTON STREET

ELIOT STREET

to the northerly line of Eliot Street, a free right of way and passage, in common with them and their heirs and assigns, over Boylston Place to and from Boylston Street. Then followed this provision: 'The Carriageway & the Sidewalks in said Place to be

used as such and in no other manner and as the same now exist and to be continued of uniform width by said Brackett.' In a new paragraph the indenture then provided that the conveyance was made on condition: First, that Boylston Place be continued and made up to said line forty feet distant from Eliot Street at the sole cost of said Brackett; that the same never be continued through to Eliot Street with his aid or consent or with the aid or consent of his heirs or assigns; that Brackett build a brick building opposite the end of said Place fronting on Eliot Street at least three stories high and without any doors opening on to, or passageways leading therefrom into, Boylston Place, the object being to prevent as far as possible a street or common passageway from being ever made over Boylston Place to connect Boylston Street with Eliot Street or any passageway between them. Second, that Brackett build a drain through Boylston Place and across his adjoining land into the common sewer in Eliot Street for the use of the Boylston Place estates, and in consideration of the premises the right to drain said estates through said drain, 'is hereby conveyed by said Brackett, to the parties of the first part and their respective heirs and assigns in fee simple,' the expenses of entering the drain to be equitably assessed on the parties using the same. Third, that Brackett also erect fronting on said Place as continued ten brick dwelling houses, five on each side, of good style and of similar class to those already fronting on said Place; that no materials for building the same be carried over the Place, and until such houses be ready for occupancy that the brick wall at the foot of the then existing Place should not be removed; and that until all of the houses should be erected every vacant lot should be suitably fenced so as to effectually exclude all passage from the same over Boylston Place, 'so that none but the occupants of the new buildings, so to be erected on said Place shall ever be able to avail themselves of any of the privileges hereby conveyed.'

"Said houses were duly erected and the carriageway and sidewalk extended, as called for by the indenture, and a plan showing said house lots, with Boylston Place so extended and the houses and stores standing on Brackett's remaining land on Eliot Street, was recorded in the registry of deeds. On March 1, 1856, Brackett conveyed to one Mason the five house lots on the easterly side of

Boylston Place as extended, describing them as bounded westerly
by the easterly line of Boylston Place, and granting 'the right in
common with the other tenants [in Boylston Place] of ingress
and egress in the use of said Place sidewalks and drains paying a
just proportion of the repairs as reserved in an Indenture' of 1853
aforesaid. Four of these house lots were substantially re-pur-
chased by said Brackett in 1864, and the fifth, by the trustees
under his will, in 1877.

"In 1865 a further indenture was made between the same par-
ties, reciting the indenture of 1853 by which Brackett was ex-
cluded from any right of way or access over Boylston Place to
any part of the premises owned by him on the northerly side of
Eliot Street within a line forty feet distant therefrom, and pro-
viding that for the term of ten years said Brackett, his heirs and
assigns, should have a free right to enter said heretofore restricted
premises and the building thereon, except the basement story
thereof, through the front door of the dwelling house numbered
eleven on Boylston Place, which was the most southerly of the
houses on the west side of the Place, so that the second story and
those above it of the building on the theretofore restricted premises
might be occupied as rooms in connection with the dwelling house
numbered eleven Boylston Place, on the strict condition that a
partition wall be constructed between the portion of the premises
to which access to Boylston Place was thus given and the rest of
the Eliot Street property; that the roof of the theretofore restricted
premises should not be used for hanging out or drying clothes;
that all means of connection or approach to the theretofore re-
stricted premises to Eliot Street, together with the windows to
the basement looking upon said Boylston Place should be walled
up permanently with brick so as to effectually prevent any way
or thoroughfare being established between said Eliot Street and
Boylston Place. By these instruments it was clearly intended
that the well known but intangible social line drawn between
residents on Boylston Place and persons coming from the neigh-
borhood of Eliot Street should be drawn with legal preciseness
and physically delineated by brick and mortar."

The Land Court ruled that the respondents had no right in or
over any of the Brackett land except a right of drainage in fee,
and ordered a decree to issue registering the title of the petitioners

accordingly. To this ruling the respondents seasonably alleged an exception.

The decision continued as follows:

"The respondents contend that the portion of Brackett's Eliot Street property lying northerly of the forty foot line from Eliot Street thereby became permanently incorporated as a part of Boylston Place, to the advantage of all of the abutters thereon. The petitioners say that the Boylston Place owners merely granted to Brackett a definite and specific easement out to Boylston Street for the portion of his property lying north of the forty foot line, while Brackett granted to them in return an impenetrable barrier to Eliot Street, except for a specific easement of drainage; and that that is all that was done. The respondents argue with much force that the creation and permanent maintenance of Boylston Place as extended was to the obvious advantage of their estates; that the indenture of 1853 amounted to an agreement that it should be so continued, made and maintained, and that the deed to Mason of 1856 and the agreement of 1865 for a temporary annex show the practical construction put upon the matter by the parties, and constitute admissions by Brackett.

"There is no estoppel under the 1856 deed, because the title came back into Brackett and the respondents claim nothing thereunder. So far as admission is concerned, there is no punctuation in the clause that is quoted, and the phrase 'as reserved in an Indenture' of 1853 apparently qualifies the whole of it. Moreover the recital of the 'right in common with the other tenants [in Boylston Place] of ingress and egress in the use of said Place' can be construed as referring to rights in the extension in common with the tenants on its westerly side, and rights in the old part in common with all of the abutters, just as readily as it can be construed into an admission that the abutters on the northerly portion of the Place have common rights in the southerly portion. *O'Brien* v. *Murphy*, 189 Mass. 353–355."

At the time the indenture of 1853 was signed and executed by the predecessors in title of the petitioners and the respondents, the land of Brackett was separated from the land of Dixwell and others by a wall which was upon the southerly boundary line of Boylston Place. The estates on either side of the southerly boundary line of Boylston Place were not held as a whole by Brackett,

Dixwell, or the other parties to the indenture, severally, nor was the title thereto held by the parties to the indenture in joint tenancy or as tenants in common. Across the land of Dixwell no ancient easement of necessity existed in fact or in right as appurtenant to the lands of Dixwell and others. In these conditions, as between the parties to the indenture, no easement in fee appurtenant to the lands of Dixwell and others could in law be created by any exception or reservation in the instrument of indenture by implication from the obvious advantage to the estates or otherwise than by grant with words of inheritance. *Carbrey* v. *Willis*, 7 Allen, 364. *Ashcroft* v. *Eastern Railroad*, 126 Mass. 196.

The decision continued as follows: "The respondents argue, however, that in any event the intent is clear that the whole of Boylston Place as extended should be a passageway for the benefit of all of the abutters thereon, and rely upon *Bailey* v. *Agawam National Bank*, 190 Mass. 20."

It is plain that *Bailey* v. *Agawam National Bank*, 190 Mass. 20, is authority only for the rule that a court of equity will specifically enforce against a promissor for value, and all others having actual notice thereof, a written agreement to maintain in perpetuity a passageway over land of the promissor for the use of land sold to the promisee at the delivery of the agreement; and it is equally plain that the rule of that case does not extend to promises and agreements arising by implication merely. *Sprague* v. *Kimball*, 213 Mass. 380.

*Exceptions overruled.*