Missouri State Oil Company, a Corporation, Plaintiff-Appellant, v. Frank Fuse and Mary Fuse, His Wife, Defendants and Third-Party Plaintiffs-Respondents, v. Joseph Pessina and Rose Pessina, His Wife, Third Party Defendants-Appellants, No. 41584—232 S. W. (2d) 501.

Division One, July 10, 1950.

Motion for Rehearing or to Transfer to Banc Overruled, September 11, 1950.

*Sylvan Agatstein* for plaintiff-appellant.

1024

*Oliver F. Erbs, David R. Hensley* and *Hensley & Hensley* for third-party defendants-appellants.

*Harry C. Avery* for defendants-respondents.

1026

█ VAN OSDOL, C.—In this action plaintiff sought a judgment and decree establishing a permanent easement on and across defendants' real property, and an order permanently restraining defendants from interfering with plaintiff's use.

█ Plaintiff and defendants acquired their respective lands from common grantors. Such grantors, Joseph Pessina and wife, were made third-party defendants, and the defendants as third-party plaintiffs sought recovery against (the grantors) third-party defendants for breach of the covenants of their warranty deed. The third-party defendants also filed a counterclaim seeking the relief of reformation of their deed to defendants (on the ground of mutual mistake) so as to express an exception of the easement which third-party defendants alleged was vested in plaintiff. The trial court found the issues and entered judgment in favor of defendants and against plaintiff on plaintiff's claim for the establishment of an easement, and for defendants as third-party plaintiffs against third-party defendants for $500 damages (attorney fees) on the third-party plaintiffs' claim for breach of the covenants of the third-party defendants' deed. Plaintiff and third-party defendants have appealed.

█ This court has appellate jurisdiction of the case on the ground that "title to real estate" is involved. Jacobs v. Brewster, 354 Mo. 729, 190 S. W. 2d 894; Wallach v. Stetina, Mo. Sup., 20 S. W. 2d 663; Davis v. Lea, 293 Mo. 660, 239 S. W. 823. See also Chapman v. Schearf, 360 Mo. 551, 229 S. W. 2d 552; Section 3, Article V, Constitution of Missouri 1945, Mo. R. S. A. Const. Art. V, § 3. We here note that this is not a case wherein the relief sought by a plaintiff is an order restraining the interference with an alleged existing easement, and wherein proof of title to the alleged easement is merely supportive of the prayer for the injunctive order. In such a case "title" is only collaterally or incidentally involved. Wallach v. Stetina, supra. In the instant case, the plaintiff has additionally sought the relief of an adjudication of the existence of an easement— an interest in land in another's possession. It is true "title" in the sense of evidence of ownership of a fee simple estate is not in issue; but the relief sought is a decree establishing an easement, which easement would interfere with the absolute owners', defendants', right of exclusive and unrestricted possession and user, and which decree would amount to an adjudication of such an interest in defendants' real estate as would encumber the land and cloud the clarity of defendants' otherwise perfect fee simple title. The relief sought, if granted, would directly operate upon defendants' title "in some measure or degree." See Nettleton Bank v. McGauhey's Estate, 318 Mo. 948, 2 S. W. 2d 771. Our case also differs from the appeal in a condemnation proceeding wherein (the antecedent perfect fee simple title in the landowner being conceded) the issue is not "title"—the issue is on the *right* to *take* all or a part of the land-

owner's conceded title. City of St. Louis v. Butler Co., 358 Mo. 1221, 219 S. W. 2d 372; Missouri Power & Light Co. v. Creed, 325 Mo. 1194, 30 S. W. 2d 605.

In 1936 third-party defendants, Joseph and Rose Pessina, acquired real property at the northeast corner of the intersection of Macklind and Bischoff Avenues in St. Louis. The tract had a frontage to the southward on Bischoff of 89 feet 6 inches, and extended northwardly along the east side of Macklind Avenue 162 feet 2¼ inches. In 1932 a brick building, used as a filling station, had been erected on the west side of the tract; and a residence building, facing Bischoff Avenue, was situate on the east side of the tract. Prior to their acquisition of the (89' 6" x 162' 2¼") tract, the Pessinas had operated the filling station, and they had occupied the residence property since 1938.

February 13, 1946, the third-party defendants, Pessinas, by their general warranty deed, conveyed the west fifty feet of the tract to plaintiff, Missouri State Oil Company; and plaintiff through its lessees entered into possession of the filling-station property, and the operation of the filling station by plaintiff's lessees has been continued. June 11, 1946, the third-party defendants, by their general warranty deed, conveyed the east 39 feet 6 inches of the tract to defendants (third-party plaintiffs), Frank Fuse and wife; and defendants entered into possession of the residence property. Neither of the warranty deeds in any way mentioned any easement appurtenant to the filling-station property. Since the filling station has been operated, west-bound ▆ patrons of the filling station have been passing across the southwest corner of the residence property upon and over a triangular concrete-surfaced extension of the concrete-surfaced apron or driveway approach from Bischoff Avenue to the gasoline pumps situate in front of and to the southward of the filling-station building. The triangular extension of the driveway approach is 10 feet at its base (along the north side of Bischoff Avenue), with its west side extending northwardly 15 feet along the west line of the residence property and with its concavely-curved hypotenuse of about 18 feet delineated by a concrete retaining wall or curb varying from about 2 to 2½ feet in height and apparently about 6 inches in width, but which wall or curb, at its southeast end, declines in height and ends at the level of the sidewalk at the north sidewalk line. The retaining wall or curb retains the higher ground of that part of the residence property to the northeastward. As stated, the triangular extension has been so constructed and maintained since the filling station has been operated.

January 19, 1946 (prior to the execution of the warranty deed by the Pessinas, third-party defendants, to plaintiff in February 1946), the Pessinas, vendors, had executed their "Receipt For Earnest Money" to plaintiff, purchaser, reciting the money received was

part of the purchase money for the filling-station property (50' x 162' 2¼") which the vendors undertook to convey by warranty deed to plaintiff. By an attached "rider" the Pessinas, vendors, further agreed "to grant and convey to purchaser a permanent easement over and across the southwest corner of his adjoining property to the east of the hereinabove described real estate coinciding with the present paved driveway giving access to the conveyed property; which easement shall be surveyed before the closing of this transaction and pursuant thereto specifically described to the satisfaction of the parties." The survey mentioned was not completed until June 12, 1946, just after the conveyance of the residence property (39' 6" x 162' 2¼") to defendants, Fuses, had been completed, June 11, 1946.

No express grant of the stipulated easement has been made by the third-party defendants to plaintiff, and no mention was made of any easement in the deed of February 13th. Yet it might be argued that plaintiff, by the "rider" attached to the contract of purchase, acquired a right or interest in the residence property, more particularly in the triangular area, as against the Pessinas, third-party defendants, which right, although not evidenced by an actual grant and not cognizable by a court of law, was enforceable in a court of equity as against the vendors, Pessinas, third-party defendants. 58 C. J., Specific Performance, § 242, p. 1031; Louisville & N. R. Co. v. Nelson, 145 Ga. 594, 89 S. E. 693; Apsey v. Nash, 229 Mass. 77, 118 N. E. 180; Bailey v. Agawam National Bank, 190 Mass. 20, 76 N. E. 449. The third-party defendants have not denied such equitable right in plaintiff; have alleged an easement in plaintiff; and, as stated supra, have sought a decree of reformation of their deed to defendants on the alleged ground the failure to expressly except an easement from the covenants of their conveyance to defendants was due to mutual mistake. Obviously, the contract to convey the easement has not been consummated by a grant.

Defendants had no constructive notice by any recordation of the contract to convey a right of user appurtenant to the filling-station property, nor is it shown defendants had actual notice of the contract; and, as stated, the third-party defendants made no express grant of an easement in their conveyance to plaintiff, and made no express exception of any right of such a user in their conveyance to the Fuses, defendants. Yet the physical condition of the property indicated it was affected by a use. The obviously permanent nature of the improvement and the visible character of the user were sufficient, it is contended, to suggest to a purchaser of the residence property that such property was subject to a servitude. And it is not here said that defendants would not have had notice of and taken subject to an easement of passage over the triangular area, if there

were a valid ▆▆▆ easement by grant express or implied. (In this case we are not concerned with any question of prescriptive user.)

▆ Defendant-respondent, third-party plaintiff, Frank Fuse, testified that, prior to the negotiations for the purchase of the residence property, he inspected the property. Joseph Pessina, third-party defendant, showed him the location of the property lines, including the west boundary line. Pessina did not "say anything about an easement." Defendant Fuse had lived about three blocks from the property for twelve years and had passed the residence property "numerous times." He had seen the paved triangular area, and the retaining wall extending "practically to the center walk that led from the sidewalk to the front door" of the residence building. He made no inquiry of Pessina or plaintiff relating to "what right they had to go across the front of the property"; he had known "for a great many years that the property was being used that way"; and he had known "for years" that "this retaining wall and this part of the driveway was so constructed." He "didn't ask a word" until about "six months after we bought the house." Pessina then said "there was an easement on it." Pessina testified that, during the negotiations for the sale of the residence property to defendants, he showed them the property line and "explained the easement to them at that time." Pessina employed the scrivener to prepare the conveyance to defendants. The scrivener testified he was "almost sure nothing was said" about the easement.

(While the third-party defendants, appellants, have not assigned error of the trial court in failing to render a decree reforming their deed to defendants, we may here say we believe the evidence does not justify a decree of the reformation of such conveyance on the ground of mistake. It was not clearly proved the parties to the conveyance had the common intention that an easement was to be excepted from the covenants of the conveyance, and so it should not be said the exception was omitted because of mutual mistake. See generally, 53 C. J., Reformation of Instruments, § 60, pp. 945-947.)

▆ It is urged by appellants that the rule quoted by this court in Missouri Power & Light Co. v. Thomas et ux., 340 Mo. 1022, 102 S. W. 2d 564, from Pomeroy, Executor, v. Chicago & Milwaukee Railroad Company, 25 Wis. 641, at page 643, is applicable. The rule is as follows,

"Where there is a sale of a tract of land upon which there is an obvious existing easement or burden of any kind, like an ordinary highway, a railroad, or millpond, the fair presumption, in the absence of any express provision in the contract upon the subject, is, that both parties act with direct reference to the apparent existing burden, and that the vendor demands, and the purchaser pays, only the value of the land subject to it.

This presumption is independent of the question whether the party enjoying the easement has perfected his title as against the vendor or not. Nothing being said upon the subject, they deal with the property in its existing condition, and upon the assumption that it is subject to all the burdens to which it appears to be subject."

We consider the rule inapplicable here. In Missouri Power & Light Co. v. Thomas et ux., supra, the defendants had purchased at a sheriff's sale in partition. The facts may have justified a finding that the plaintiff was vested with title to an easement by prescriptive user; and the purchasers, defendants, did not acquire the property by a conveyance with covenants of title. In any event, the quoted Wisconsin rule, we believe, is only applicable where there is an existing easement by grant, express or implied. The general application of the rule stated by the Supreme Court of Wisconsin would compel the general recognition of a corollary rule as follows, "that purchasers of property obviously and notoriously subjected at the time to some right of easement or servitude affecting its physical condition; take it subject to such right, without any express exceptions in the conveyance; and that the vendors are not liable on their covenants by reason of its existence." Kutz v. McCune, 22 Wis. 628. This may be the law of Wisconsin, but it is not the law of Missouri. See now Kellogg v. Malin, 50 Mo. 496, and 62 Mo. 429; Williamson ██ v. Hall, 62 Mo. 405; Whiteside v. Magruder, 75 Mo. App. 364; Farrington v. Tourtelott, 39 Fed. 738; 14 Am. Jur., Covenants, Conditions and Restrictions, § 105, pp. 551-552.

██ Appellants, plaintiff and third-party defendants, further contend the facts demonstrate an easement was created by implied grant. At the outset it may be stated that the tendency of the courts, as a general rule, is to discourage implied grants of easements, since the obvious result, especially in urban communities, is to fetter estates, retard buildings and improvements, and violate the policy of recording acts. 17 Am. Jur., Easements, § 32, p. 944; Schnider v. M. E. H. Realty Inv. Co., 239 Mo. App. 546, 193 S. W. 2d 69. However, the following principle of the law of implied easements is quoted, "Where the owner of land has, by any artificial arrangement, effected an advantage for one portion, to the burdening of the other, upon a severance of the ownership the holders of the two portions take them respectively charged with the servitude and entitled to the benefit openly and visibly attached at the time of the conveyance of the portion first granted." Lampman v. Milks, 21 N. Y. 505; Hall v. Morton, 125 Mo. App. 315, 102 S. W. 570. It has been said this principle applies to ways. Greisinger v. Klinhardt, 321 Mo. 186, 9 S. W. 2d 978. The benefit must be reasonably necessary to the enjoyment of the dominant estate, and apparent at the time of the severance by the original owner. Foxx v. Thompson, 358 Mo.

610, 216 S. W. 2d 87; Mahnken v. Gillespie, 329 Mo. 51, 43 S. W. 2d 797; Greisinger. v. Klinhardt, supra; Bussmeyer v. Jablonsky, 241 Mo. 681, 145 S. W. 772.

We are of the opinion that the evidence does not sustain the theory of an easement by implied grant. The triangular area is not a way of necessity, nor is it, under the evidence, essential to the operation of the filling station; and, we believe it is not necessary to the reasonable use and enjoyment of the filling-station property, even though it may be considered a great convenience. It is true that automobiles approaching from the east on Bischoff Avenue will be required to turn to the right more acutely if the triangular extension is not to be utilized; however, photographs introduced into evidence indicate there is sufficient space for the approach of west-bound automobiles to the filling-station pumps, although an automobile is shown in each of the photographs to be parked on the triangular extension. The defendants introduced evidence tending to show that patrons of the filling station frequently parked their automobiles on the triangular extension, and that other patrons westbound on Bischoff Avenue nevertheless drove to the pumps for the servicing of their cars. One of the lessees of plaintiff testified that, after cars are serviced, they are often parked on the triangular extension, and "even with cars parked there . . . customers still can get in and out that apron." Moreover, there are gasoline pumps, not in use, on the south (Macklind Avenue) side of the filling-station property, which pumps, we infer, could be easily made available for service. As we have said, the triangular extension is a convenience; and patrons of the filling station have frequently passed over the extension. The extension enables automobiles to approach from the street in a more sweepingly easy turn than if it were not used; yet, as stated, there appears to be adequate space available without passage over the disputed area. The principle of the law of implied easements is applicable when the easement is necessary; the rule is not one of absolute or strict necessity, but of reasonable necessity—the benefit must be reasonably necessary to the enjoyment and use of the dominant estate—but the rule is nevertheless one of necessity, not of convenience. Foxx v. Thompson, supra, and other cases cited in the preceding paragraph.

The trial court correctly found against plaintiff-appellant on its claim for an easement—the defendants successfully defended plaintiff's action. But the Pessinas, although summoned as third-party defendants, not only did not defend defendants' title, but joined with plaintiff in asserting and undertaking to prove there was a valid easement in plaintiff. While no case directly in point has been cited (compare ▇▇▇▇ Hazelett v. Woodruff, 150 Mo. 534, 51 S. W. 1048), we are of the view that, by asserting an easement was vested in plaintiff in derogation of the covenants of their deed,

the Pessinas acted in violation of the covenants of their deed. Although by their deed they had undertaken to warrant and defend defendants' title against "lawful" claims, the Pessinas, in effect, alleged and undertook to prove that plaintiff's claim was lawful; so it would seem to us that, on the question of attorney fees, the trial court justly found and rendered judgment for defendants against the third-party defendants for attorney fees reasonably incurred by defendants in the defense of the action.

The trial court's judgment and decree should be affirmed.

It is so ordered. *Lozier* and *Aschemeyer, CC.*, concur.

PER CURIAM:—The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court. All the judges concur.