Walter MARSHALL and Ruby Marshall, d/b/a Marshall Oil Company, Appellants,

v.

William E. SPANGLER, Respondent.

No. WD 35902.

Missouri Court of Appeals, Western District.

Dec. 4, 1984.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied Jan. 29, 1985.

Application to Transfer Denied April 2, 1985.

Kevin K. Anderson and John C. Milholland, Harrisonville, for appellants.

Lynn K. Ballew, Harrisonville, for respondent.

Before KENNEDY, P.J., and DIXON and CLARK, JJ.

KENNEDY, Presiding Judge.

The Marshalls appeal from a trial court judgment which denied an easement in favor of their service station premises for ingress and egress of their customers over, and for parking upon, Spangler's adjoining restaurant premises, and which denied damages for the obstruction of said supposed easement.

The background facts are as follows:

The service station, originally known as "Don's Texaco Truck Stop", and the restaurant, which has always been known as the "Dinner Bell Restaurant", were originally constructed by Mr. and Mrs. Ament on a tract of ground lying 641 feet along what is now Highway 291 at Harrisonville. The highway at that point runs north and south. Mr. and Mrs. Ament operated the service station business until some date before 1973, when they leased it to plaintiff Marshalls' predecessors in title. The lease was a lease-purchase arrangement, as shown by the inventory of Mr. Ament's estate. He died in 1975. Mrs. Ament in 1977 conveyed the property to them. The plaintiffs Marshall purchased the service station in 1980 and have continued to operate it until the time of trial.

The restaurant was never operated by the Aments but was operated by various other persons, probably under lease. Defendant Spangler leased the restaurant in 1966 and operated it as lessee until 1973.

In 1973 he purchased it, and has continued to own and operate it up until the time of trial.

During the whole history of the restaurant and the service station they have operated side by side, except for an interval of unspecified length before the Marshalls' 1980 purchase of the service station property. During that period the service station had been closed.

The service station and the restaurant although under different management had always (except for a brief time at the beginning when the operator of the restaurant undertook to operate a gourmet restaurant) and until the events which precipitated this lawsuit in 1982, operated in tandem as a "truck stop". It was attractive to truckers in that they could fuel at the service station and eat at the restaurant. There was a good deal of space around both establishments to accommodate large trucks. During a part of the time the two establishments sponsored joint advertising.

The service station and restaurant, as noted before, occupied a lot lying 641 feet along the highway. The service station was on the north end. The restaurant was on the south end. A parking area lay between the two. There were seven wide driveways from Highway 291 for ingress and egress. There was no barrier between the service station premises and the restaurant premises. The customers of both used any one of the seven driveways and both used the common parking lot. It appears, however, that the large trucks fueling at the service station made a good deal . more use of the parking area and the driveways near the south end of the lot than the restaurant customers made use of the driveways on the north end. Much of the truckers' use of the parking was while they were eating or were drinking coffee at the restaurant.

When Mr. and Mrs. Ament divided the title as between the service station premises and the restaurant premises, Spangler acquired title to the south 241 feet of the tract, while Marshalls' predecessor in title received the north 400 feet of the tract.

Each of the two tracts was 300.66 feet in depth. The restaurant property contained two acres and the service station premises included 2.75 acres.

The three south driveways led into the restaurant property. The northernmost of those three was wholly on the restaurant property but was near the boundary line. Four of the driveways were on the service station premises.

The trouble which has wound up here started in 1982 when Spangler built a concrete barrier east and west parallel to the boundary between his restaurant property and Marshalls' service station property and 50 feet south thereof. Spangler explained at trial that this was to prevent the hazard of trucks rolling across the premises, and to prevent oil spills from flowing on to his paved parking lot. After the barrier's erection, the trucks could no longer pass from the service station property to the restaurant without driving into the highway. Spangler also blocked the southernmost exit. He divided the second driveway, the next one toward the north, constructing "enter" and "exit" lanes, so that it could not be used by a large trailer truck, although it could be used by passenger cars. The next driveway to the north (lying nearest the service station boundary), his employees blocked by parking their cars, although that continued only for a time and at trial time that driveway could be used by the trucks entering or leaving the service station premises. Spangler has threatened to build his concrete barrier on the boundary between the service station property and the restaurant property, which would effectively prevent the use of the third driveway from the south by Marshalls' service station customers.

The Marshalls attacked this barrier by means of the present lawsuit. Their theory was, and is, that they have an *implied easement* for their customers to park on and drive over the restaurant property, and to have access to the driveways located on the restaurant property. The respective deeds by which the parties hold title make no reference to any easement.

The doctrine of easement by implication from preexisting use has been defined as follows, in *Greisinger v. Klinhardt*, 321 Mo. 186, 9 S.W.2d 978 (1928):

"Where the owner of land has, by any artificial arrangement, effected an advantage for one portion, to the burdening of the other, upon a severance of the ownership the holders of the two portions take them respectively charged with the servitude and entitled to the benefit openly and visibly attached at the time of the conveyance of the portion first granted."

That principle applies to ways, lateral support, and riparian rights (quoting *Hall v. Morton*, 125 Mo.App. 315, 102 S.W. 570 (1907)) (citations omitted).

*Id.* 9 S.W.2d at 980.

In *Causey v. Williams*, 398 S.W.2d 190 (Mo.App.1965), the court says:

It is also held (17A Am.Jur., Easements § 52, pp. 660 and 661) that to create an easement by implication from pre-existing use there must be (1) unity and subsequent separation of title; (2) obvious benefit to the dominant estate and burden to the servient portion of the premises existing at the time of the conveyance; (3) use of the premises by the common owner in their altered condition long enough before the conveyance and under such circumstances as to show that the change was intended to be permanent; and (4) reasonable necessity for the easement.

*Id.* 398 S.W.2d at 197.

The evidence in this case, as we shall show on a closer look later in the opinion, shows that the availability of the restaurant parking area and driveways for parking and for ingress and egress would be an advantage, a benefit, a convenience to Marshalls' service station property. That is not enough; there must be a reasonable necessity therefor. The emphasis is more on the word "necessity" than on the word "reasonable". Notice the following language in *Missouri State Oil Co. v. Fuse*, 360 Mo. 1022, 232 S.W.2d 501 (1950):

The principle of the law of implied easements is applicable when the easement is necessary; the rule is not one of absolute or strict necessity, but of reasonable necessity—the benefit must be reasonably necessary to the enjoyment and use of the dominant estate—but the rule is nevertheless one of necessity, not of convenience. (Citations omitted.)

*Id.* 232 S.W.2d at 506.

This requirement that one who claims an implied easement must show that the easement is *necessary* is based upon a policy mentioned earlier in that case, 232 S.W.2d at 506:

At the outset it may be stated that the tendency of the courts, as a general rule, is to discourage implied grants of easements, since the obvious result, especially in urban communities, is to fetter estates, retard buildings and improvements, and violate the policy of recording acts. 17 Am.Jur., Easements, § 32, p. 944; *Schnider v. M.E.H. Realty Inv. Co.*, 239 Mo.App. 546, 193 S.W.2d 69.

Have the Marshalls shown such a degree of necessity for the claimed easement that it must be implied as a matter of law? We hold that, under the evidence in this case, the trial court may not be held in error in rejecting the Marshalls' claim of implied easement.

Most of the testimony centered upon the diesel pumps and the large tractor-trailer trucks, 50 to 65 feet in length, which fueled at the diesel pumps. There appear to be three diesel pumps located on a single concrete island. They are near the south side of the service station tract, remote from the service station building and the other pumps which are covered by a canopy and located to the north of the diesel pumps. Mr. Marshall testified that the south diesel pump was about 15 feet from his property line and the north diesel pump was 23 feet from his property line. It appears to us from the scale aerial photograph which has been supplied that the southernmost diesel pump is more than 50 feet north from the boundary. It would appear from the pictures that it would be difficult for a 50-to-

65-foot trailer truck which had parked parallel to the diesel pumps to turn out of the southernmost service station driveway. It would have to turn almost at a right angle. Mr. Marshall testified, "It would take some maneuvering". This makes it much more convenient and inviting for them to drive forward and go out of one of the restaurant driveways.

Mr. Marshall also testified to limited truck parking on his property because of congestion caused by his own and customers' vehicles.

There seems to be several alternative arrangements which could be made. The trucks could drive into the diesel fuel pumps going east and west—at right angles with the highway—and could enter or depart by a driveway along the south part of the service station property, exiting on a road which runs along the north side of the service station property and which connects with the highway. A second alternative to which no one testified, but which appears feasible from the photographs, would be to move the diesel pumps toward the north, which would allow trucks to enter and depart by the southernmost service station driveway. Once again from the scale aerial photos supplied to us, there appears to be plenty of room for that. There is no evidence of the expense involved in either of these alternate arrangements, but they would not be prohibitive. *Seested v. Applegate*, 26 S.W.2d 796 (Mo.App.1930); *Foxx v. Thompson*, 358 Mo. 610, 216 S.W.2d 87 (1948).

We think the evidence is entirely sufficient to sustain the trial judge's denial of plaintiff Marshall's claim of an implied easement over defendant Spangler's restaurant property in favor of his, plaintiff's, service station property. It follows, of course, that plaintiff is not entitled to damages for loss of business.

Judgment affirmed.

All concur.