Duane H. GERKEN and Kay L. Gerken, Respondents,

v.

James F. EPPS, et al., Appellants.

Nos. 16086, 16136.

Missouri Court of Appeals, Southern District, Division One.

Jan. 18, 1990.

Lois M. Zerrer, and J.T. Magness, Springfield, James K. Justus, Forsyth, for appellants.

David L. Smith, Cantwell, Allman & Smith, Branson, for respondents.

CROW, Presiding Judge.

Duane H. Gerken and Kay L. Gerken ("plaintiffs") brought an action under § 228.340, RSMo 1986, for the establishment of a private road across two tracts of

land. One tract was owned by James F. Epps and his wife, Alice C. Epps. The other tract was owned by Effie Ogle, Wanda Mead (Effie's daughter), and Lloyd Mead (Wanda's husband).

The trial court entered judgment which, among other things, established the road, awarded James F. Epps and Alice C. Epps damages of $2,500, and awarded Lloyd Mead and Wanda Mead "as surviving joint tenants" of Effie Ogle damages of $8,500.

The Eppses' lawyer of record in the trial court filed a notice of appeal naming "Jim Epps"—alone—as appellant. That appeal was assigned number 16086. Defendant James F. Epps was referred to on occasion in the trial court as "Jim Epps" and no contention is made here that the Jim Epps named as appellant in number 16086 is anyone other than defendant James F. Epps. We shall therefore treat appeal 16086 as an appeal by defendant James F. Epps.

Defendant Alice C. Epps, however, is not named as an appellant in the notice of appeal in number 16086.

Rule 81.08(a)[1] provides: "The notice of appeal shall specify the parties taking the appeal...." As the notice of appeal in number 16086 does not name Alice C. Epps as an appellant it is doubtful she is a party to that appeal. *See: Hodges v. Hodges,* 692 S.W.2d 361, 364–65 n. 2 (Mo.App.1985), and *Moore v. City of Pacific,* 534 S.W.2d 486, 493–94[3] (Mo.App.1976). An appellants' brief has nonetheless been filed in appeal 16086 on behalf of "Appellants James and Alice Epps." Plaintiffs have not moved to strike the brief as to Alice C. Epps. Inasmuch as we have concluded, for reasons appearing *infra,* that the judgment must be affirmed, we need not decide whether Alice C. Epps is an appellant in number 16086.

The lawyer of record in the trial court for Effie Ogle, Wanda Mead and Lloyd Mead filed a notice of appeal naming those three individuals as appellants. That appeal was assigned number 16136.

The testimony of Lloyd Mead at a hearing August 17, 1988, in the trial court established that Effie Ogle was alive that date. Although we find no suggestion of her death in the record, she evidently died after that date and prior to December 21, 1988, inasmuch as the latter date was when judgment was entered stating Lloyd Mead and Wanda Mead are the surviving joint tenants of Effie Ogle.

Rule 52.13(a)(2)[2] provides: "In the event of the death of ... one or more of the defendants in an action in which the right sought to be enforced. survives only ... against the surviving defendants, the death shall be suggested on the record and the action shall proceed ... against the surviving parties."

■ As no personal representative was substituted for Effie Ogle in the trial court upon her death, it appears all parties, along with the trial court, assumed the tract owned by Effie Ogle, Wanda Mead and Lloyd Mead was owned by them as joint tenants, not as tenants in common. The interest of a joint tenant in a joint estate is extinguished by his death and the title of the survivors to the whole estate simply continues and is not a new interest or transfer of title. *Williamson's Estate v. Williamson,* 380 S.W.2d 333, 338[3] (Mo. 1964).

Despite the fact that the judgment indicates Effie Ogle died prior to its entry, an appellants' brief has been filed in appeal 16136 on behalf of "Appellants Effie Ogle and Lloyd and Wanda Mead." Plaintiffs have not moved to strike the brief as to Effie Ogle.

Given the posture of the record and the lack of concern by any party regarding the consequences of Effie Ogle's death, we shall assume, without deciding, that the tract owned by her, Wanda Mead and Lloyd Mead was owned by them as joint tenants so that upon Effie's death her interest was extinguished and Wanda Mead

---

**1.** Rule references are to Missouri Rules of Civil Procedure (19th ed. 1988).

**2.** See also § 507.100.1(2), RSMo 1986.

and Lloyd Mead thereafter continued to own the tract as joint tenants.[3]

For convenience we shall refer to the appealing party in number 16086 as "defendants Epps" without implying we would have held Alice C. Epps is an appellant had it been necessary to decide that issue. We shall refer to the appellants in number 16136 as "defendants Mead," as it is obvious Effie Ogle, by reason of her death, is no longer a party.

Appeals 16086 and 16136 have been consolidated for the purpose of this opinion.

Comprehending the issues presented in these appeals requires an understanding of how the three parcels are situated with respect to each other.

Plaintiffs own the NE ¼ NE ¼ and the north 15 acres of the SE ¼ NE ¼ in section 31 (the township and range are immaterial to any issue here).

Defendants Epps own the SW ¼ SW ¼ of section 29, the NW ¼ NW ¼ of section 32, and part of the SW ¼ NW ¼ of section 32.

This means the east boundary of plaintiffs' tract is the west boundary of the Epps tract.

Defendants Mead evidently own the SE ¼ of section 30 except a portion used for highway purposes and a portion conveyed to a third party in 1985.

This means the north boundary of plaintiffs' tract is the south boundary of the Mead tract. It also means that north of plaintiffs' tract the east boundary of the Mead tract is the west boundary of the Epps tract. That is, going north from the northeast corner of plaintiffs' tract the land on the west is owned by the Meads and the land on the east is owned by the Eppses.

At the northwest corner of the Epps tract (said point being the northwest corner of the SW ¼ SW ¼ of section 29) is a road proceeding north to highway 248.

The trial court's judgment established a road 40 feet wide beginning at the northwest corner of the Epps land and proceeding south 100 feet, then west onto the Mead land at an angle so as to miss a pond, then south 1,220 feet to the northeast corner of plaintiffs' land.

We first consider appeal 16086, as only one point is briefed in that appeal. The point reads:

"The trial court erred in finding a way of strict necessity on behalf of plaintiffs in that the law requires that plaintiffs have no legally enforceable alternative route from their land to a public road, because there was evidence that plaintiffs had a legally enforceable alternative route by means of a common law easement by necessity."

■ Missouri law affords two remedies to owners of real property who have no means of ingress or egress: (1) the statutory method under § 228.340, or (2) a common law easement by necessity. *Tadlock v. Otterbine*, 767 S.W.2d 366, 369 (Mo.App. 1989); *King v. Jack Cooper Transport Co., Inc.*, 708 S.W.2d 194, 196[2] (Mo.App. 1986).

In an action to establish a private road under § 228.340 it has been said:

"The fact that the way is one of necessity, that is, strict necessity, and not mere convenience, is a jurisdictional fact, and must be alleged and proved, affirmatively. (citation omitted) So long as the plaintiff had a practicable way to and from his land, either private or public, he had not a right, by necessity, to a way over the defendant's lands.... [A] way, as here meant, is a legal way, to use which one has a legal right, which may be enforced, and which may not be rightfully interfered with." *Evans v. Mansfield*, 364 S.W.2d 548, 551[3] (Mo.1963).

*Accord: Hill v. Kennoy, Inc.*, 522 S.W.2d 775, 777 (Mo. banc 1975); *Fortenberry v. Bali*, 668 S.W.2d 216, 218[1] (Mo.App.1984).

Defendants Epps maintain plaintiffs have a legally enforceable route to a public

---

**3.** We cannot confirm that the assumption is correct inasmuch as the conveyance by which Effie Ogle, Wanda Mead and Lloyd Mead be-

came owners of their property is not in the record.

road by means of a common law easement by necessity across land south of plaintiffs' tract owned by Edwin Stockstill. Consequently, say defendants Epps, plaintiffs are not entitled to a private road per § 228.340 across the Epps tract.

The common law easement to which defendants Epps refer has been characterized as an "easement by implication." It arises when an owner conveys part of his land to another. In *Causey v. Williams,* 398 S.W.2d 190, 197[5] (Mo.App.1965), we are told:

"It is a well-settled rule that where, during the unity of title, an apparently permanent and obvious servitude is imposed on one part of an estate in favor of another part, which servitude at the time of the severance, is in use and is reasonably necessary for the fair enjoyment of the other part of the estate, then upon a severance of the ownership, a grant of the right to continue such use arises by implication of law. This doctrine is usually called the rule of visible easements."

■ To create an easement by implication from preexisting use the following elements must exist: (1) unity and subsequent separation of title, (2) obvious benefit to the dominant estate and burden to the servient portion of the premises existing at the time of the conveyance, (3) use of the premises by the common owner in their altered condition long enough before the conveyance under such circumstances as to show that the change was intended to be permanent, and (4) reasonable necessity for the easement. *Causey,* 398 S.W.2d at 197.

Defendants Epps rely on the following evidence in support of the hypothesis that plaintiffs have a legally enforceable easement by implication over the Edwin Stockstill land that abuts the south boundary of plaintiffs' land.

Plaintiffs purchased their land at a sheriff's sale in partition on July 7, 1986. Their deed from the sheriff recites the sale was ordered by the Circuit Court of Taney County in a suit wherein Robert Stockstill was the named plaintiff and "Dorothy Collins, et al.," were the named defendants.

Defendant James F. Epps, as we comprehend his testimony, recounted that the land plaintiffs bought at the partition sale was once owned by Roy Stockstill and Mary Stockstill.

The trial court took judicial notice of a probate record in the estate of D.R. Stockstill, incompetent. Asked whether D.R. Stockstill was the same person as Roy Stockstill, witness Epps replied, "Daniel Roy Stockstill."

The probate record showed that as of August 28, 1976, D.R. Stockstill and Mary A. Stockstill, husband and wife, were the owners of the tract ultimately purchased by plaintiffs at the partition sale. The probate record also showed that as of August 28, 1976, D.R. Stockstill and Mary A. Stockstill, husband and wife, owned the south 25 acres of the SE ¼ NE ¼ in section 31 and part of the NE ¼ SE ¼ in section 31. The land described in the preceding sentence lies directly south of plaintiffs' tract. The probate record further showed that on November 18, 1976, an order was entered authorizing the sale of the land described in the second sentence of this paragraph to Edwin Stockstill and Lucile E. Stockstill.

Defendant James F. Epps testified that Roy Stockstill died, survived by Mary Stockstill.

The trial court took judicial notice of a probate record in the estate of Mary A. Stockstill, deceased, dated April 10, 1984, showing that title to the tract ultimately purchased by plaintiffs at the partition sale passed upon the death of Mary A. Stockstill (August 2, 1983) to 17 named persons. Eleven of them received a ¹⁄₁₂ interest each; the other six received a ¹⁄₇₂ interest each. Among the individuals receiving a ¹⁄₁₂ interest each were Robert Stockstill, the named plaintiff in the partition suit, Dorothy Collins, one of the named defendants in that suit, and Edwin Stockstill.

Plaintiff Duane H. Gerken testified that the land south of plaintiffs' property is presently owned by Edwin Stockstill.

The evidence set forth in the seven preceding paragraphs demonstrates that as of

August 28, 1976, the land presently owned by plaintiffs and the land presently owned by Edwin Stockstill—the record is silent as to what became of Lucile E. Stockstill after 1976—was owned by D.R. Stockstill and Mary A. Stockstill, husband and wife. It is thus clear that there was once unity of ownership of plaintiffs' tract and the Edwin Stockstill tract, and that the unity of ownership was severed when the latter tract was sold in 1976 to Edwin Stockstill and Lucile E. Stockstill.

Unity and subsequent separation of title, however, is only one of the elements of an easement by implication. Establishment of such an easement also requires, among other things, a showing of obvious benefit to the dominant estate and burden to the servient portion of the premises existing at the time of the conveyance, and use of the premises by the common owner in their altered condition long enough before the conveyance under such circumstances as to show that the change was intended to be permanent. *Causey*, 398 S.W.2d at 197.

At trial plaintiff Duane H. Gerken was asked whether there is any way to get to a public road going south from his property. He answered, "There is what used to be the old county road down in the bottom that parallels and crosses Roark Creek[.]"

The exhibits accompanying the record on appeal clearly show that the "old county road" does not abut the south boundary of plaintiffs' land, and that should plaintiffs attempt to go south from their property to the "old county road" they would have to cross the Edwin Stockstill land—or perhaps the Epps land.

Asked whether there was any evidence of an "old homestead" on plaintiffs' property, Duane H. Gerken testified:

"A   Yes. It's the old Kane farm and the old—you can still see the well house and one of the buildings and foundations of a couple other houses.

. . . .

Q   Is there any evidence of a roadbed that served that residence back when it was in—occupied and used?

A   You can follow the road that comes down through this property, through this field, through the homestead, back out down here, back out down this way, and down to the bottom and the county road."

There is, therefore, evidence that there was once a road from the south boundary of plaintiffs' tract across the Edwin Stockstill tract to the "old county road." There was, however, no evidence that the former road was being used to get from the "old county road" to the land now owned by plaintiffs when the unity of ownership was severed in 1976.

Asked whether he had ever driven a vehicle to his property, plaintiff Duane H. Gerken testified:

"A   Came down the old county road this way, came down through here, had to go along the side of the creek here, forded the creek somewhere over in this area, came back through this low-lying area. This was in a four-wheel drive, rather high pickup, back through this, up this ledgerock road.

Q   And, then drove—

A   —And, then drove—followed the existing road, you know, and drove right back to the homestead and right up here."

Plaintiff Kay L. Gerken testified she had driven from the "old county road" to plaintiffs' land on one occasion in a "high four-wheel drive." Her testimony:

"Q   Then, on that occasion you drove up through the Stockstill property and back across the creek and then up the road along the triangle up to that property, is that right?

A   Right, We had to ford the creek down there, and then we went on up."

Defendants Epps direct our attention to no other evidence tending to show an obvious benefit to the dominant estate (plaintiffs' land) and burden to the servient portion (Edwin Stockstill land) existing at the time unity of ownership was severed in 1976. Defendants Epps likewise direct our attention to no other evidence pertinent to whether the "homestead road" (as they call it) across the Stockstill property was, prior to the severance in ownership, in use long

enough under such circumstances as to show its use was intended to be permanent.

There was no evidence as to when the "homestead road" had been used, or by whom. There was no evidence it was in use in 1976 when Edwin Stockstill and Lucile E. Stockstill acquired their land from D.R. Stockstill and Mary A. Stockstill. Given the difficulty plaintiffs encountered traveling the "homestead road" it is inferable that the road had not been used for decades, if ever, as a regular means of getting from the land now owned by plaintiffs to the "old county road."

Moreover, there was no evidence that anyone was residing in 1976 on the land plaintiffs now own. For that matter, there was no evidence that anyone was residing in 1976 on the land now owned by Edwin Stockstill. Indeed, in the contract by which Edwin Stockstill and Lucile E. Stockstill bought their land in 1976 there is a provision that "in the event the physical and mental condition of the said D.R. Stockstill at some future time should be such that he and the said Mary A. Stockstill desire to reside in the house located upon the real estate herein contracted to be sold, that they may do so and they may occupy the same rent free." The contract further recites that Edwin Stockstill and Lucile E. Stockstill, at the time of the transaction, were residing in Columbia, Illinois. One can readily infer from this evidence that none of the parties to the 1976 transaction were living on the property at that time.

Finally, there is no evidence that D.R. Stockstill and Mary A. Stockstill ever resided on the land now owned by plaintiffs, so that they would have needed to use the "homestead road" to get from their residence to the "old county road." James F. Epps testified "Roy and Mary Stockstill" once lived on the land adjacent to the Epps property, but he did not indicate whether the residence of Roy and Mary Stockstill was on the tract now owned by plaintiffs or the tract now owned by Edwin Stockstill.

■ In sum, the evidence is too vague for us to convict the trial court of error in failing to find that during the unity of title of the land now owned by plaintiffs and the land now owned by Edwin Stockstill, an apparently permanent and obvious servitude was imposed on the latter parcel in favor of the former, which servitude at the time of the severance was in use and was reasonably necessary for the fair enjoyment of the former. Said another way, the evidence is insufficient to compel a holding by us that an "easement by implication" exists as a matter of law in favor of plaintiffs across the Edwin Stockstill land.

Defendants Epps also call our attention to three cases declaring that a grant of a way is presumed to have been made whenever land has been sold which is inaccessible except by passing over the land of the grantor. *Vossen v. Dautel*, 116 Mo. 379, 22 S.W. 734, 735 (1893); *Fortenberry*, 668 S.W.2d at 219[4]; *Orvis v. Garms*, 638 S.W.2d 773, 778 (Mo.App.1982).

■ We fail to see how that rule applies here. The land sold by D.R. Stockstill and Mary A. Stockstill to Edwin Stockstill and Lucile E. Stockstill in 1976 apparently abutted the "old county road." Consequently, that land was not inaccessible. If any land lacked access to the "old county road" after the 1976 transaction it was the land *retained* by D.R. Stockstill and Mary A. Stockstill. Mary became sole owner of that land upon the death of D.R. Stockstill, and upon Mary's death title passed to 17 individuals, one of whom was Edwin Stockstill. Ownership passed from those 17 owners to plaintiffs by virtue of the 1986 partition sale.

It is thus obvious we do not have a situation where Edwin Stockstill originally owned both tracts and conveyed to plaintiffs the one that lacked access to the "old county road." Edwin Stockstill never owned the land now owned by plaintiffs. The only interest he ever had in it was the 1/12 interest which passed to him in 1983 upon the death of Mary A. Stockstill. Edwin Stockstill did not, therefore, convey land to plaintiffs that was inaccessible except by passing over other land owned by him.

It is equally clear that Mary A. Stockstill's successors in ownership did not convey land to plaintiffs that was inaccessible except by passing over land owned by the

successors. After the 1976 transaction the land abutting the "old county road" was owned by Edwin Stockstill and Lucile E. Stockstill. The land retained by D.R. Stockstill and Mary A. Stockstill did not abut the "old county road." That being so, at the time of the partition sale in 1986 the successors in ownership of Mary A. Stockstill did not own land over which access lay to the "old county road." The rule in *Vossen*, 22 S.W. 734, *Fortenberry*, 668 S.W.2d 216, and *Orvis*, 638 S.W.2d 773, is consequently inapplicable.

The point relied on in appeal 16086 is denied.

Appeal 16136 presents three points, the second of which reads:

"The trial court erred in finding that the road was of strict necessity because it overlooked and ignored common law doctrine that a grant of a way is presumed to have been made whenever land has been sold which is inaccessible except by passing over the land of the grantors. The common law doctrine of unity in title, which the evidence in this case shows."

We gather from the above point and the accompanying argument that defendants Mead are asserting the same claim of error as defendants Epps asserted in appeal 16086. For the reasons set forth in our discussion of that appeal the second point of defendants Mead is denied.

The first point relied on by defendants Mead is that § 228.340, RSMo 1986, authorizes the establishment of a private road in favor of plaintiffs only if no public road passes through or alongside their land. Defendants Mead aver plaintiffs' land "bordered a public road."

This contention is flatly contrary to a finding by the trial court that plaintiffs' property is landlocked and that "no public road passes through or touches plaintiffs' lands."

Defendants Mead, as we fathom the argument accompanying their first point, rely on three items of evidence to support it. The first is a photograph taken by defendant James F. Epps which, according to his testimony, "was taken across the old coun-ty road." Reading the testimony in context it is obvious that the witness was referring to a "triangle" in which some land was owned by Edwin Stockstill and the rest by the Eppses. Indeed, asked about ownership of a road through the area, James F. Epps testified, "Well, part of it belongs to me, and part of it belongs to Ed Stockstill, according to the tax map and according to the way that thing is written."

The second item of evidence to which defendants Mead direct us is the testimony of defendant James F. Epps that the south boundary of his property is the north right-of-way line of the "old county road." The deed by which the Eppses acquired ownership of their property in 1951 refers to its southern boundary as the "foot of Bluff where Public Road now runs on North side of Roark Creek." While this evidence indicates the south side of the Epps land abuts the road it supports no inference that plaintiffs' land does.

The third item of evidence relied on by defendants Mead in support of their first point is the testimony of a surveyor that several deeds refer to the county road along the north bank of Roark Creek as a boundary line between properties. We have scrutinized the testimony and find nothing in it even remotely suggesting that the road abuts or passes through plaintiffs' property. The first point of defendants Mead is patently meritless.

Their final point complains about the money damages awarded them.

■ Pursuant to § 228.340 the trial court appointed three commissioners to mark out the private road sought by plaintiffs and to assess damages to the owners of the two tracts through which it was to pass. In their amended report the commissioners assessed the damages of defendants Mead at $15,000. The trial court, after a hearing on sundry issues including damages, entered an order reducing the damages of defendants Mead to $8,500. That amount was carried forward in the judgment. Defendants Mead assert the trial court was without authority to reduce

the damages assessed by the commission-
ers.

Defendants Mead are incorrect. *Mau-
pin v. Bearden,* 708 S.W.2d 799, 800–01[2]
(Mo.App.1986). Their final point is denied.[4]

Judgment affirmed.

GREENE and PREWITT, JJ., concur.

---

**4.** Defendants Mead filed no written exceptions
to the amended report of the commissioners
within the time allowed by § 228.400, RSMo
1986, nor did defendants Mead, within ten days
after the trial court's order reducing their dam-
ages to $8,500, file any written objection to that

order or any request for a jury trial on the
damages issue. *Maupin,* 708 S.W.2d at 801[3].
Consequently, defendants Mead were not enti-
tled to a jury determination on the amount of
damages.