**Gerald T. RUSSO and Dana F. Russo, Husband and Wife, Plaintiffs–Appellants,**

v.

**Noah Mark BRUCE and Julia Bruce, Husband and Wife,**

**and**

**Daniel Lee Reed and Kathy Sue Reed, Husband and Wife, Defendants–Respondents.**

No. 28544.

Missouri Court of Appeals, Southern District, Division Two.

July 18, 2008.

Rehearing Denied Aug. 11, 2008.

Application for Transfer Denied Sept. 30, 2008.

William Swain Perkins of Thayer, MO, for appellants.

Jeri Leigh Caskey, Alton, MO, for respondents Bruce.

Harvey Shane Allen, Thayer, MO for respondents Reed.

DON E. BURRELL, J.

This appeal arises from a property dispute between neighbors. Gerald Russo and Dana Russo ("the Russos") filed a petition against Noah Bruce and Julia Bruce ("the Bruces") and Daniel Reed and Kathy Reed ("the Reeds") alleging (among other counts not relevant to this appeal) they had the right to continue to drive over property owned by the Bruces because an easement by implication had been created. After a bench trial, the trial court found against the Russos and they now appeal the trial court's denial of an implied easement.

## Background

In 2002, the Reeds purchased several tracts of land from Sandra Peck. In 2004, the Reeds sold one of those tracts to the Russos. The deed received by the Russos contained an express access easement which ran from what they thought was the northeast corner of their property to County Road 425. At the time the Russos purchased the property, a gravel drive ran from County Road 425 to the middle of the northern section of the Russos' property ("the drive"). To reach County Road 425 using the drive, the Russos had to travel across a total of three tracts of land still owned by the Reeds.

The Russos mistakenly believed that the portion of the drive not covered by the express easement was located on the property they had purchased from the Reeds. Daniel Reed testified that he also thought the Russos' property included that portion of the drive. Daniel Reed stated that—prior to selling to the Russos—he had also lived in the same manufactured home the Russos were now occupying and had also used the same drive to reach County Road 425.

In 2005, the Reeds sold their three remaining tracts to the Bruces. Two of those three tracts were subject to the Russos' express access easement. Prior to closing the sale, the Bruces had a survey conducted and thereby discovered that a portion of the drive not covered by the express easement was located not on land owned by the Russos, but on that third tract to be deeded to the Bruces.

At the time the Bruces purchased their property from the Reeds, the Russos were living overseas. When the Russos returned, they saw the surveying lines and realized that a portion of the drive not included in their express easement was actually located on the Bruces' land. After some discussions, the Bruces eventually informed the Russos that they (the Russos) would not be allowed to continue to use that portion of the drive. The Bruces then built a fence along their true property line which physically closed off that portion of the drive and precluded any further use of it by the Russos.

After the Bruces built the fence, the Russos filed the instant suit. The Russos' petition asserted that an easement by implication [1] over that portion of the drive had been created when the Reeds sold the property to the Russos.

At trial, the Bruces presented evidence indicating that there was an existing alternative lane on the Russos' property that would allow the Russos to reach their express access easement without traversing any of the Bruces' land. The Bruces also showed how the Russos could create yet another means of access to their property from County Road 426 that would not require the use of any implied easement running across the Bruces' land.

The trial court ultimately found against the Russos on their claim of an implied easement. Although the trial court noted that the Russos had two other means of access to their property, it did not rely on the existence of these alternative routes as a basis for its ruling. Instead, the trial court found that the existence of the express easement in the Russos' deed pre-

---

1. At times, the Russos refer to the claimed easement as a "visible" easement and claim that such easements are subject to a different legal analysis than that applied to other implied easements. Neither the Russos nor our review of the law of Missouri indicates that any such legal distinction exists. *See Post Hill Homeowners Assn. v. Kennell*, 39 S.W.3d 508, 512–13 (Mo.App. W.D.2000); *Gerken v. Epps*, 783 S.W.2d 157, 160 (Mo.App. S.D. 1990). Therefore, we use the more generic nomenclature of "implied" easement.

cluded any finding that an easement by implication could also exist.

### Standard of Review

█ In a court-tried case, we will affirm the judgment unless it is against the weight of the evidence, no substantial evidence exists to support it, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We defer to the trial court's witness credibility determinations, Rule 84.13(d);[2] *Hale v. Warren*, 236 S.W.3d 687, 691 (Mo.App. S.D.2007), and view all evidence and any inferences therefrom in the light most favorable to the judgment. *Hale* 236 S.W.3d at 691. Because appellate courts are primarily concerned with the correctness of the result reached by the trial court, we are not bound by its rationale and may affirm the judgment on any grounds sufficient to sustain it. *Trimble v. Pracna*, 167 S.W.3d 706, 716 (Mo. banc 2005).

### Analysis

█ The Russos challenge only the portion of the trial court's judgment that denied them an easement by implication. Specifically, the Russos claim the trial court was incorrect when it found that the existence of an express easement in the Russos' deed precluded any finding that an implied easement could also exist. Because we find that the Russos failed to prove the facts necessary to qualify for an implied easement, we do not directly address the issue raised by the Russos.[3]

█ To establish their right to an easement by implication, the Russos needed to demonstrate:

(1) unity and subsequent separation of title; (2) obvious benefit to the dominant estate and burden to the servient portion of the premises existing at the time of the conveyance; (3) use of the premises by the common owner in the altered condition long enough before the conveyance under such circumstances as to show that the change was intended to be permanent; and (4) reasonable necessity for the easement.

*Gerken v. Epps*, 783 S.W.2d 157, 160 (Mo. App. S.D.1990) (cited with approval in *Rogers v. Brockland*, 889 S.W.2d 827, 829 (Mo. banc 1994)). The party seeking to demonstrate the existence of an implied easement bears the burden of demonstrating the existence of all four prerequisites by clear and convincing evidence. *Causey v. Williams*, 398 S.W.2d 190, 197 (Mo.App. 1965); *Pendleton v. Gundaker*, 381 S.W.2d 849, 851 (Mo.1964). The only factor in dispute in this case is element number four. In regard to that factor, the necessity at issue is a "reasonable" one; not an absolute necessity. *Full Gospel Fellowship v. Stockwell*, 938 S.W.2d 677, 678 (Mo. App. E.D.1997).

Two cases dealing with what constitutes a reasonable necessity in this context are particularly instructive. In *Marshall v. Spangler*, 686 S.W.2d 8 (Mo.App. W.D. 1984), the owners of a service station sought an implied easement for their customers to continue to park on and drive over property actually owned by a nearby restaurant. *Id.* at 10. The service station's diesel pumps, which were often used by tractor-trailer trucks, were situated between the two businesses. *Id.* The restau-

---

**2.** Unless otherwise noted, all references to rules are to Missouri Rules of Civil Procedure (2008).

**3.** We do note in passing, however, that the existence of an express easement does not

necessarily preclude a finding that an implied easement also exists. *See, e.g., Hillside Development Co., Inc. v. Fields*, 928 S.W.2d 886, 889 (Mo.App. W.D.1996).

rant built a concrete barrier separating the two businesses which prevented service station customers from using the restaurant's parking lot's exits to travel to and from the service station. *Id.* Because of the barrier, it became extremely difficult, if not impossible, for tractor-trailer truck drivers using the diesel pumps to exit out of the station's driveway onto the adjacent highway. *Id.* at 11–12. Although the *Marshall* court found that the asserted implied easement would have been beneficial to the service station in that the truck drivers could more easily drive forward to leave the station by using one of the restaurant's driveways then to back away from the pumps, the station owners could not demonstrate that the proposed easement was thereby reasonably necessary for the operation of the station. *Id.* Instead, the court found that the station could either move its diesel pumps or have the trucks enter in a different manner so as to be able to exit forward onto a different road that then connected to the highway. *Id.* at 12.

In *Pendleton,* the plaintiffs, owners of residential lot 21, sought an implied easement over residential lot 22 owned by their immediate neighbor to the west. 381 S.W.2d at 850. A garage was located at the rear of plaintiffs' land which they accessed by means of an asphalt surfaced driveway located on lot 22. *Id.* at 849–50. On the east side of plaintiffs' land, a retaining wall ran between plaintiffs' lot and the lot owned by their immediate neighbor to the east. *Id.* at 850. The distance between that retaining wall and plaintiffs' home was approximately eight and one-half feet. *Id.* The defendants purchased lot 22 and began building a house. In doing so, defendants removed the asphalt driveway plaintiffs had been using to access their garage. *Id.* In denying the plaintiffs' request for an implied easement, the *Pendleton* court found that the plain-

tiffs could not demonstrate that the driveway on lot 22 was reasonably necessary for the enjoyment of plaintiffs' lot. *Id.* at 852. The court stated that plaintiffs could access their garage by using the eight and one-half foot strip of land between plaintiffs' house and the retaining wall. *Id.* at 851–52. The *Pendleton* court held that plaintiffs could not demonstrate a reasonable necessity for the easement, even though it recognized that plaintiffs might not be able to fit every make of automobile between the house and the retaining wall and that considerable expense might be involved in creating a new driveway there. *Id.* at 852.

In the case at bar, the Russos had alternative means of accessing both their express easement and County Road 425 by routes that would not require them to enter onto the Bruces' unencumbered land. Using either of these alternative routes would subject them to much less difficulty and expense than the alternatives suggested in both *Pendleton* and *Marshall.* Because the Russos failed to show that the claimed implied, or "visible," easement across the Bruces' land was reasonably necessary for the full and beneficial use of their estate, they thereby failed to prove the existence of one of the four elements necessary for the creation of an implied easement and the judgment of the trial court is affirmed.

LYNCH, C.J., and BARNEY, P.J., concur.