**Donald SCHAUMBURG and Ruth Schaumburg, his wife, Plaintiffs–Respondents,**

v.

**Richard D'AMOUR and Judy D'Amour, his wife, Defendants–Appellants.**

No. SD 29004.

Missouri Court of Appeals, Southern District, Division II.

Dec. 17, 2008.

Douglas R. Kennedy, Poplar Bluff, for appellants.

John N. Wiles, West Plains, for respondents.

NANCY STEFFEN RAHMEYER, Judge.

Richard and Judy D'Amour ("Appellants") challenge the trial court's order granting an easement across their property to Donald and Ruth Schaumburg ("Respondents"). Appellants contend the trial court erred because there is neither an express nor implied easement across their property. We agree and reverse the judgment of the trial court.

The property owned by Appellants and Respondents was once under the common ownership of Geary and Dorothy Scanlan. In 1998, the Scanlans sold part of their property to Dennis and Jane Reese, but retained the "homestead." David Huddleston and his wife owned all of the property on the north boundaries of both the Scanlans' and Reeses' properties. Thus, the Reeses shared a border with the Scanlan property to the east, south, and west, and the Huddlestons' property bordered the Reeses' property and the Scanlans' property to the north. On March 29, 2002, the Huddlestons gave a quitclaim deed for a perpetual nonexclusive easement to the Scanlans from Highway 160 to the front drive of the Scanlan property. The Scanlans also gave an easement to the Huddlestons, which was identical to the easement given by the Huddlestons to the Scanlans.[1] There is nothing in the record to indicate why mutual easements were given by the Huddlestons and the Scanlans. At the same time as the mutual easements were given, the Huddlestons alone gave a quitclaim deed to the Reeses' company, R.H.S. Ranch, Inc., for a perpetual nonexclusive easement on the same route as the easement granted to the Scanlans, but the easement to R.H.S. Ranch, Inc., was 368 feet shorter than the mutual easements. It terminated at the east boundary of the west side of the Reeses' property and did not extend into the Scanlan tract. Mr. Huddleston testified that he intended for the easement to contain identical terms as the mutual easements and for the easement to extend east of Appellants' house all the way past a gate that was to the left of an "old road bed," which is the disputed land in this case.

The old road bed cut through the northeast section of the Scanlans' property, which they ultimately sold to Appellants. The testimony of Mrs. D'Amour, Mr. Schaumburg, and Mr. Reese demonstrated that the old road bed was not fenced on both sides going in an east/west direction; the only fence running in an east/west direction was the Huddlestons' south boundary fence, which was on the north side of the old road bed. Mr. Reese also testified that he never accessed his property across the north boundary of the Scanlans' property. He felt that if he accessed his property across the north boundary he would be going through the Scanlans' yard.

Regarding the use and appearance of the old road bed, Mr. Huddleston testified that it had been utilized as pasture since

<hr />

1. We refer to the mutual easements as the Scanlan/Huddleston easements for clarity, however, we note that only the easement from Huddleston to Scanlan was admitted into evidence. We rely on the testimony of the parties that the easement from Scanlan to Huddleston contained identical terms.

the 1930's. Mr. Reese testified that he used the area where the old road bed was located for a horse pasture and there was no lane there. Mr. D'Amour testified that when he purchased his property the area where the old road bed was located had "weeds all over it."

After a foreclosure on the Reeses' property and a series of deed transfers, Respondents entered into an agreement to purchase the property in December 2002.[2] Soon thereafter, Respondents began to access the east side of their property from the west side of their property by using the old road bed that cut through the northeast section of the Scanlans' property. They also installed gates at the old road bed.

On October 14, 2005, Appellants took title to the property on which the Scanlans' home was situated. A dispute arose between Respondents and Appellants over Respondents' use of the old road bed. After the dispute began, Respondents began building a road across Appellants' property. Appellants had a survey conducted, and the surveyor verified that the Scanlan/Huddleston easements did not extend to the gates installed by Respondents. The surveyor testified that the Scanlan/Huddleston easements terminated approximately sixty to seventy feet before the gates; impliedly then, the easement to R.H.S. Ranch, Inc., which was 368 feet shorter than the Scanlan/Huddleston easements, also did not extend to the gates installed by Respondents.

Respondents filed a cause of action and pled ejectment, quiet title, injunction, and trespass. Respondents claimed title to Appellants' property up to a boundary fence. Appellants filed an answer and counterclaim, pleading ejectment, quiet title, injunction, and trespass. At the close of the evidence, the court allowed Respondents to amend their pleadings to conform to the evidence to plead that Respondents had an easement over the old road bed. The trial court found that Respondents did have an easement over the old bed road cutting through the northeast section of Appellants' property.

Appellants bring two points on appeal. First, they claim the trial court erred in sustaining Respondents' motion to amend the pleadings to conform to the evidence

to plead an easement in [Respondents] favor because the evidence as to the existence of an easement that was received without objection did not bear solely on the proposed new issue but was relevant to another issue already in the case in that the issue of punitive damages for [Appellants'] action in trespass was already in the case thereby making relevant on that issue any evidence as to [Respondents'] good faith and honest belief that [Appellants'] act of trespass was lawful.

Appellants claim in their second point that

the trial court erred in granting an easement along the north boundary of [Appellants'] property because the trial court's judgment was not supported by substantial evidence, was against the weight of the evidence and erroneously declared or applied the law in that the court incorrectly found facts not established in the record that was before the court regarding usage, character and termination of an easement and thereby incorrectly declared and applied the law to those facts not established in the record.

2. The sales agreement was entered into in December 2002. The closing on the property was on January 29, 2003; however, the deed transferring the property is dated May 30, 2003.

We begin our analysis by turning to Appellants' second point, which is dispositive of this appeal.

■■■ Respondents do not contend that they have an express easement and it is without question that they do not. The deed from Mr. Huddleston to R.H.S. Ranch Inc. did not include the land where the old road bed is located. Respondents do, however, allege that they have an implied easement. To establish their right to an easement by implication, Respondents needed to demonstrate the following four prerequisites:

> (1) unity and subsequent separation of title; (2) obvious benefit to the dominant estate and burden to the servient portion of the premises existing at the time of the conveyance; (3) use of the premises by the common owner in the altered condition long enough before the conveyance under such circumstances as to show that the change was intended to be permanent; and (4) reasonable necessity for the easement.

*Russo v. Bruce*, 263 S.W.3d 684, 687 (Mo. App. S.D.2008). "The law does not favor the implication of easements in view of the restriction it places on the free use of land." *Meinhardt v. Luaders*, 575 S.W.2d 213, 216 (Mo.App.1978). Respondents, therefore, bore the burden of demonstrating the existence of all four prerequisites by clear, cogent, and convincing evidence. *Russo*, 263 S.W.3d at 687; *Meinhardt*, 575 S.W.2d at 216.

The first prerequisite, unity and subsequent separation of title, has been demonstrated. Substantial evidence showed that the properties owned by Respondents and Appellants were once under the common ownership of the Scanlans. The separation of title occurred in 1998 when the Scanlans sold property to the Reeses. The other three prerequisites, however,

have not been demonstrated by clear, cogent and convincing evidence.

Respondents failed to prove an obvious benefit to the dominant estate and burden to the servient portion of the premises existing at the time of the conveyance. We are at a loss, and the record does not assist us, to determine how Mr. Huddleston could give R.H.S. Ranch, Inc., an easement over what appeared to be the Scanlans' property. There is no contention that the Scanlans gave R.H.S. Ranch, Inc., any easement over their property. Mr. Huddleston's testimony as to his intent in giving an easement to R.H.S. Ranch, Inc., does not assist Respondents in Respondents' claim to an implied easement over property never used by Huddleston.

Our focus is on the benefit to the Reeses' property and the burden to the Scanlans' property. There was no evidence that at the time of the conveyance from the Scanlans to the Reeses, the old road bed was being used as a road to enter the property now owned by Respondents. Mr. Huddleston testified that since the 1930's, rather than being used as a road, the old road bed had been utilized as pasture. Also, the lack of an obvious benefit to the dominant estate was demonstrated by Mr. Reese's testimony that he did not use and felt that he could not use the Scanlans' property to access his own property. Mr. Reese testified that when he accessed his property from the east, he never traveled across the north boundary of the Scanlans' property. He felt that if he went across the north boundary, he would be going through the Scanlans' yard.

Respondents also failed to prove the use of the premises by the common owner in the altered condition long enough before the conveyance under such circumstances as to show that the change was intended to be permanent. As noted, there was no

evidence that the Scanlans even used the old road bed to access the property now owned by Respondents. The only evidence before the trial court showing that the old road bed was ever used as a road to access the property now owned by Respondents was Mr. Schaumburg's testimony that in December 2002 he began to access his property using the old road bed; however, the focus for an implied easement is on the use of the land by the common owner before the separation of title, not on its use by an owner who purchased the land years after the conveyance severing the two properties. Respondents' use of the old road bed as a road to access their property since 2002 in no way supports a finding that the Scanlans used the old road bed to access the property before they conveyed it to the Reeses or that the Reeses used the disputed land as a roadway.

Finally, Respondents failed to prove that they had a reasonable necessity for the easement since there was evidence that they could access their property without entering upon Appellants' land. Mr. Schaumburg testified that although it would take several thousand dollars and a lot of fence, he could improve a road that comes in from the east of his property and use that road to bring in the tractor trailers needed for his business. Respondents failed to prove by clear, cogent and convincing evidence that they have an implied easement over property belonging to someone else by mere usage from December of 2002 to 2005 when Appellants bought the property.

Alternatively, Respondents argue that there is an implied easement because the disputed area was a public road. The trial court so found that, "although abandoned by the public, [it] would have vested easements for ingress and egress to the adjoining owners." A 1930 Missouri State Highway Department map identifies the old road bed as the "present road to Alton" and as part of the then existing "Route 19." Respondents' first survey identifies the old road bed as "Old Highway 19." Respondents agree, however, that the Route 19 designation is not on the Missouri Department of Transportation's present system. Not only does the road not appear on the Department of Transportation's system, but evidence demonstrated that even if there ever was a public road at the location of the old road bed, that road terminated as far back as the 1930's when it began being used as pasture. When the road terminated, there were no adjoining landowners that would have received easements. There was only one common owner and that common owner would not have needed an easement because he owned the land on which the road was located. There was absolutely no testimony that the public ever used that road at any time. Therefore, no easements were ever created by virtue of the old road bed ever being a public road. Appellants' second point is granted and there is no need to address their complaint concerning an amendment of the pleadings.

Appellants have not appealed from any other portion of the judgment and the remainder of the judgment is affirmed; however, the trial court's judgment finding that Respondents had an easement by implication over Appellants' land is reversed and remanded for the trial court is ordered to enter a judgment consistent with this opinion.

LYNCH, C.J., PARRISH, J., concur.