Daniel HOWELL, Respondent,

v.

Bruce A. RICKARD and Mark S. Rickard, Appellants.

No. SD 29546.

Missouri Court of Appeals, Southern District, Division One.

Oct. 28, 2009.

Jacob W. Stauffer, Stauffer Law Firm, LLC, West Plains, for Appellants.

Brad D. Eidson, Houston, for Respondent.

ROBERT S. BARNEY, Judge.

Bruce A. Rickard ("Mr. Rickard") and Mark S. Rickard (collectively "Appellants") appeal the judgment of the trial court which granted: an "easement by implication;" a common law "easement by necessi-

ty;" and injunctive relief preventing the blocking of the aforementioned easements over their property in favor of Daniel Howell ("Respondent").[1]  We affirm the judgment of the trial court.

Viewing the evidence in the light most favorable to the trial court's judgment, *Beery v. Shinkle,* 193 S.W.3d 435, 439 (Mo. App.2006), the record reveals that Appellants and Respondent are adjoining landowners who own property in rural Texas County.  They both purchased their property from Herb V. Tuttle ("Mr. Tuttle") and Vera Faye Tuttle (collectively "the Tuttles") and the property was once part of a single large tract of land.  Respondent purchased his property from the Tuttles on September 24, 2001, and Appellants purchased their property from the Tuttles on January 7, 2002.  Neither party resides full-time on his respective property.[2]

In late 2006 a dispute arose among the parties in relation to Respondent's use of an "old logging road,"[3] which runs across Appellants' property, for ingress and egress to his own property.  Respondent filed suit against Appellants in order to establish an easement over their property. In his Second Amended Petition, Respondent requested he be granted the following remedies: an easement by implication, an easement by necessity, a statutory easement by strict necessity and a permanent injunction.

At trial, Respondent testified that prior to purchasing his property in 2001 he visited the property on "[t]wo or three" occasions with the Tuttles and during each of these visits he utilized the old logging road as a means of reaching the property.[4]  He stated the old logging road "comes in from Camden Drive and goes all the way to [and through a portion of his] property" and at the time he purchased his property he was not aware of any other road leading to it. He testified that the old logging road runs for "seven-tenths of a mile" through Appellants' property and, while it is a curvy, dirt and gravel road, it is easily traversed by him in his Toyota Corolla.  He stated that throughout the time he has been utilizing the old logging road it appeared substantially the same as when he had used it during every visit to his property from 2001 to late 2006.  He also stated he met Appellants after they purchased their property and there were no concerns raised at that time about his use of the old logging road.

In 2004, Appellants informed Respondent they were going to place a locked cable across the road, but they gave Respondent a key to the lock.  Respondent had their permission to use the old logging road with the exception that they did not want him using it during deer hunting season.  Respondent admitted that he did use the road one time during deer season. Respondent also testified that from 2003 to

---

1. The trial court found Respondent's Count III for statutory easement by necessity was moot based on its determination in Count II that Respondent was entitled to a common law easement by necessity.

2. Respondent testified he has built a cabin on his property but does not have running water or electricity.  He related he goes to his property "[e]very weekend, or every week."  Appellants use their property for recreational purposes such as hunting and fishing.

3. The parties referred to the disputed route for ingress and egress various ways in the trial court and in their briefs presented to this Court.  Based on the record, we have chosen to refer to the disputed route as "the old logging road."

4. Both Respondent and Mr. Rickard testified that Mr. Tuttle used the old logging road in his logging enterprise to remove his logs from the property and he continued to do so for a period of six months after Appellants purchased their property.

2006 Appellants utilized the portion of the old logging road which runs across his land to access some land they had leased on the other side of Respondent's property.

In November of 2006 Appellants placed a gate at the entrance to the old logging road to bar Respondent from using the roadway because, according to Appellants, he had used the old logging road during deer season and there had also been multiple vehicles using the road. Respondent, nevertheless, was able to use the road for approximately two weeks after Appellants blocked the road with the gate. Since that time, Respondent has not used the old logging road and has had to find alternative means of accessing his property. He stated he asked and was granted permission from several neighboring property owners to enter his land via a gravel road ("Schoolhouse Road") by crossing properties of three other people.[5] He stated this route took him up and down several difficult-to-traverse hills and across Burton Branch creek.[6] He related this roadway was periodically so impassable that he kept a small truck parked near the roadway so he could leave his car and proceed in the truck.

He further related that he was aware that several months prior to trial Appellants constructed a new road ("the new road") along the edge of their property which leads to his property. He stated that he had not driven along the new road but believed he would be unable to do so because it is "very hilly" and crosses a "very steep ravine between [Appellants' property] and [his] cabin." He related the new road also crosses Burton Branch creek, as Schoolhouse Road does, and there would be issues with it being passable in wet weather.

Mr. Rickard testified that when Appellants were looking at purchasing their property and were driving around with Mr. Tuttle, they encountered Respondent using the old logging road to access his property.[7] He related that he was introduced to Respondent at that time. Mr. Tuttle informed Appellants that he believed Respondent would like to continue using the old logging road if they purchased the property and Appellants indicated to Mr. Tuttle that they would not be amenable to that.

Mr. Rickard likewise testified that after purchasing the property he did not speak with Respondent for over a year. He stated that in 2004 he encountered Respondent and the person building Respondent's cabin utilizing the old logging road. Mr. Rickard testified that at that time he told Respondent he was going to put a cable up over the road but he would give him a key to it as long as he abided by the restriction of not using the old logging road during deer and turkey hunting season and only using the road himself. He also related Respondent did not abide by

5. Mr. Rickard testified that this route is called "Schoolhouse Road" and we will refer to it as such in this opinion.

6. According to Respondent, Burton Branch creek is "a wet weather creek that has water in [it] when [there is] wet weather, snow, and ... rain ..." and is not passable year round, particularly, in winter and spring. At trial, he testified that he had been unable to cross the creek several times that year.

7. Mr. Rickard also stated that at the time he was looking at the property, the Tuttles were utilizing the old logging road as a means of removing logs from the property and it was a visible means of ingress and egress. He further testified that he personally used the road on at least one occasion prior to purchasing the property. Further, he related he had driven the old logging road on numerous occasions since that time and it was generally passable in all weather with the exception that the ruts often hold water after a rain.

the restrictions in that he drove through the property during hunting season, and had guests who frequently utilized the road and often left the cable down and unlocked.

Mr. Rickard further related he had the new road built because he was going to be doing some logging on his property and needed a way to access the standing timber. He stated he had driven the new road on several occasions and found it to be passable in his pickup truck such that he believed, if need be, Respondent could utilize the new road for ingress and egress. Mr. Rickard testified that he had driven over Schoolhouse Road on numerous occasions and found it passable. He also related "[t]here's a couple spots that it's a little wet in the middle, but a good portion of it is graveled...."

At the close of all the evidence, the trial court took the matter under advisement. The trial court then entered its "Judgment" on July 25, 2008. Finding in relation to Count I that Respondent was "entitled to an easement by implication," the trial court determined "[t]here was a unity of common ownership of all property described in the ... [p]etition;" Respondent's property "became a dominant estate as to an implied easement for use of the private road from the public road to [Respondent's] property and [Appellants' property] became a servient estate for the private road;" the Tuttles had "constructed the private road in such a manner that it was an open, obvious, and visible benefit or advantage to [Respondent's] property and a burden to what is now [Appellants'] property;" "the private road across what is now [Appellants'] property had been used long enough before the separation of title

by the common owner and under such circumstances as to show that the private road was intended to be permanent;" and the "easement (the private road) used by [Respondent] from and after his purchase of the property is reasonably necessary for the full beneficial use and enjoyment of his property." The trial court then specifically set out a legal description for the easement which appears to follow the path of the old logging road. The trial court also found in relation to Count II, in which Respondent sought a common law easement by necessity, that "there is an easement by necessity for the dominant estate across the servient estate for a road" and that "Count III of the SECOND AMENDED PETITION, which was presented as an alternate theory of recovery, is moot in that the [trial court] is entering Judgment in Counts I and II of the SECOND AMENDED PETITION."[8] The trial court also granted Respondent's request per his Count IV for a permanent injunction to prevent Appellants from "blocking any portions of the roadway ... or impeding or preventing in any manner travel by [Respondent] or family members, tenants, guests, and agents over and across the roadway established by this Judgment." This appeal by Appellants followed.

In this court-tried equity case, our review is controlled by Rule 84.13(d) and the precepts of *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).[9] *Russo v. Bruce*, 263 S.W.3d 684, 687 (Mo.App.2008). "In a court-tried case, we will affirm the judgment unless it is against the weight of the evidence, no substantial evidence exists to support it, or it erroneously declares or applies the law." *Id.* We accept

8. In Count III, Respondent sought a statutory easement by strict necessity pursuant to section 228.342, RSMo 2000.

9. *Murphy* interpreted the provisions of then Rule 73.01(c).
All rule references are to Missouri Court Rules (2006).

the trial court's credibility determinations and view the evidence in the light most favorable to the judgment and disregard all contrary evidence and permissible inferences. *Id.* In that "appellate courts are primarily concerned with the correctness of the result reached by the trial court, we are not bound by its rationale and may affirm the judgment on any grounds sufficient to sustain it." *Id.* Accordingly, we affirm the trial court's determination granting Respondent an easement by common law necessity as per his Count II, and, as explained below, we need not review Appellants' Point I because it is moot.

In their second point relied on, Appellants maintain the trial court "erred in placing the easement by necessity ... along the [old] logging [road]" because such a determination is against the weight of the evidence, is not supported by substantial evidence, and is contrary to the law. Appellants assert the trial court's ruling was in error because there was evidence at trial that

> showed that [Respondent] could access his property along the [new] road constructed by [Appellants] with little or no harm or inconvenience, while [A]ppellants' land would be substantially devalued and [A]ppellants' use of their land would be substantially impaired by granting [Respondent] an easement along the [old] logging [road] that ran through the middle of [A]ppellants' property and interfered with their food plots and planned lake.

■ "A variety of methods to obtain access to and from parcels of land is available under Missouri law. Common law provides for easements to establish rights-of-way, i.e., easements by implication, prescriptive easements and easements of necessity." *Rogers v. Brockland,* 889 S.W.2d 827, 829 (Mo. banc 1994). "The

rights and obligations as well as the requirements for establishing and vacating each such easement or road differ depending upon the type of easement or road at issue." *Id.*

■ At issue here is a common law easement by necessity. A common law easement by necessity arises "whenever land has been sold which is inaccessible except by passing over the land of the grantor...." *Vossen v. Dautel,* 116 Mo. 379, 22 S.W. 734, 735 (1893). To obtain such an easement by necessity, the petitioner must show " 'prior unity of title, and subsequent deprivation of access to a public roadway.' " *Orvis v. Garms,* 638 S.W.2d 773, 778 (Mo.App.1982) (quoting *Lewis v. Hilkerbaumer,* 599 S.W.2d 7, 8 (Mo.App. 1980)).

■ Appellants concede that the evidence at trial established Respondent was entitled to a common law easement by necessity; however, they assert the trial court erred in its placement of the easement. Appellants urge the trial court should have established the easement over the new road, which was recently constructed by them, as opposed to the old logging road, which had previously been used by Respondent.

■ Our review of this area of law reveals that in Missouri the establishment of common law easements by necessity has fallen in disuse as recent cases focus on the issue of statutory easements by necessity that are established through the creation of a private road. *See* § 228.342, RSMo 2000. As such, this Court's research found no case law in Missouri, on the issue of the location or placement of a common law easement by necessity *per se,* nor did the parties provide any. Accordingly, we are guided by the principles relating to the establishment and location of statutory easements by necessity.

[A] court of equity has jurisdiction to determine the location of the servitude. However, in so doing the court must give due and proper regard to the rights of all the parties by taking into consideration the condition and use of the servient premises and the purposes the easement was intended to serve, bearing in mind that the grantee is entitled to a reasonably convenient way. Nonetheless, the location must also be reasonable as respects the rights of the grantor.

*State ex rel. Hillhouse v. Hunter Raffety Elevator, Inc.*, 636 S.W.2d 400, 402 (Mo. App.1982).

Here, prior to purchasing their property, Appellants were aware Respondent used the old logging road for ingress and egress. They were told this by Mr. Tuttle and they encountered Respondent utilizing the road when they were negotiating the purchase of their land with the Tuttles. Appellants and Respondent both testified that at the time of trial the old logging road was in practically the same condition it had been in since all parties had purchased their property and that both had traversed it on a regular basis. Respondent testified he had been using the old logging road with Appellants' knowledge from 2001 until Appellants put the gate up in 2006 and he never had issues with traveling the old logging road in his automobile. He testified it was the easiest way to his property and the most reliable for him to utilize.

Mr. Rickard also testified that his opposition to Respondent's use of the old logging road was that the road cut through the center of his property such that it interfered with his hunting and his future plans to possibly build a large pond and a home. Accordingly, Appellants argue Respondent should be forced to abandon using the old logging road in favor of the new road Appellants had constructed just prior to trial for their own logging benefit. Respondent, however, testified that while he had not driven the new road he opined that it would be impassable practically half of the year due to the fact that it crossed over Burton Branch creek. Further, he testified that the new road was hilly, lacked gravel for traction, and there existed a large ravine between his property and the new road such that he would be unable to traverse it in his Toyota Corolla. Respondent likewise dismissed the notion of utilizing Schoolhouse Road which also crossed Burton Branch creek, traveled through the property of at least three individuals, had several gates which had to be opened and closed, and was hilly. Respondent testified that the only sure way for him to reach his property was via the old logging road. "Where, as in this and most all cases, conflicts in testimony exist, we assume the trial court believed only the testimony and evidence consistent with its judgment." *Mathis v. Glover*, 714 S.W.2d 222, 225 (Mo.App.1986). Appellants have failed to show that the location of the old logging road was overly burdensome relative to their property rights, especially given the fact that they were aware prior to purchasing their property and for some five years thereafter that Respondent utilized the old logging road for ingress and egress. Implicitly the trial court found that the old logging road was the most reasonable and reliable means for Respondent to access his property. The trial court did not err in finding the common law easement by necessity should be located along the route of the old logging road. This location was reasonable with respect to Appellants' use of their own property. *State ex rel. Hillhouse*, 636 S.W.2d at 402. Point II is denied.

Turning now to Appellants' first point relied on, Appellants assert the trial court's grant of an easement by implication

in favor of Respondent "was not supported by substantial evidence, was against the weight of the evidence, and erroneously declared or applied the law. . . ." Due to our determination above that the trial court was correct in granting Respondent a common law easement by necessity traversing the property of Appellants, we need not review Appellants' first point relied on because the issue presented is now moot. *See KRP ex rel. Brown v. Penyweit,* 219 S.W.3d 829, 838 (Mo.App.2007).

The judgment of the trial court is affirmed.

BATES, P.J., and BURRELL, J., concur.